1  Gary M. Kaplan (State Bar No. 155530)
   gkaplan@fbm.com
2  Farella Braun + Martel LLP
   235 Montgomery Street, 17th Floor
3  San Francisco, CA 94104
   Telephone: (415) 954-4400
4  Facsimile: (415) 954-4480

5  Attorneys for Debtor in Possession
   YELLOW CAB COOPERATIVE, INC.

6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  In re                          Case No. 16-30063

13  YELLOW CAB COOPERATIVE, INC.,  Chapter 11

14              Debtor.            HEARING
                                   Date:    October 21, 2016
15                                 Time:    10:00 a.m.
                                   Place:   450 Golden Gate Avenue
16                                          San Francisco, CA
                                            Courtroom 17 (16th floor)

17     **DEBTOR'S OPPOSITION TO THE MOTION BY THE OFFICIAL
18   COMMITTEE OF UNSECURED CREDITORS FOR ORDER DIRECTING
              THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

Case: 16-30063  Doc# 347  Filed: 10/10/16  Entered: 10/10/16 21:26:19  Page 1 of 28

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................... 1

II.     THE MOTION SHOULD BE REJECTED AS PROCEDURALLY DEFECTIVE ......... 3

III.    THE ALLEGATIONS ON WHICH THE MOTION IS BASED ARE
        UNSUPPORTED AND REFUTED BY THE ACTUAL EVIDENCE,
        INCLUDING THE TESTIMONY OF THE COMMITTEE'S PRIMARY
        DECLARANT ............................................................................................. 3

IV.     THE ALLEGED MALFESANCE GENERALLY DID NOT INVOLVE
        CURRENT MANAGEMENT, AND THUS CANNOT CONSTITUTE CAUSE
        FOR APPOINTMENT OF A TRUSTEE UNDER BANKRUPTCY CODE
        SECTION 1104 ......................................................................................... 8

V.      ALL OF THE MALFESANCE ALLEGED BY THE COMMITTEE INVOLVES
        EXERCISE OF REASONABLE BUSINESS JUDGMENT WHICH CANNOT
        BE GROUNDS FOR APPOINTMENT OF A TRUSTEE UNDER SECTION
        1104 ........................................................................................................ 9

        A.      YCC's Decision To Self-Insure For Auto Insurance, Resulting In A Net
                Positive Benefit Of $37 Million, Cannot Constitute Gross Management Or
                Otherwise Be Cause For Appointment Of A Chapter 11 Trustee ........................ 10

        B.      YCC's Sale Of Property Nine Years Ago At Its Appraised Value, In Which
                It Realized A $4.7 Million Gain And Obtained Financial, Tax And Other
                Benefits, Cannot Be Cause For Appointment Of A Chapter 11 Trustee .............. 12

        C.      The Committee's Contentions Regarding YCC's Historic Payment Of
                Patronage Distributions Are Erroneous, And Do Not Constitute Grounds
                For Appointment Of A Trustee ............................................................................ 13

        D.      The Committee's Second Guessing Of YCC's Investments In SFGC And
                ATD Is Unsupported And Can Not Be Grounds For Appointment Of A
                Trustee ................................................................................................................ 15

        E.      YCC's Payment Of Fair Market Rent In Accordance With The Lease And
                This Court's Orders (With The Committee's Assent) Cannot Be Cause For
                Appointment Of A Trustee .................................................................................. 16

        F.      The Committee's Speculation Concerning YCC's Internal Correspondence
                As To A Contemplated Lease With Medallion Holders Cannot Be Grounds
                For Appointment Of A Trustee ............................................................................ 17

        G.      The Committee's Allegations Regarding YCC's Proposed Chapter 11 Plan
                And Related Negotiations With The Committee Are False, And Cannot
                Constitute Cause For Appointment Of A Trustee ................................................ 18

        H.      The Committee's Allegations Regarding Its Participation In The Potential
                Sale Of YCC's Asset Are False, And Cannot Constitute Cause For
                Appointment Of A Trustee .................................................................................. 20

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE                   - i -

Case: 16-30063    Doc# 347    Filed: 10/10/16    Entered: 10/10/16 21:26:19    Page 2 of
28

| | | |
|---|---|---|
| | I. | The Committee's Contentions That The Debtor Is Not Maximizing The Value Of The Estate For The Benefit Of Creditors Is Unsupported And Untrue .......................................................................................................... 20 |
| VI. | | APPOINTMENT OF A TRUSTEE WOULD NOT BE IN THE BEST INTERESTS OF THE ESTATE AND ITS CONSITUENTS PURSUANT TO BANKRUPTCY CODE SECTION 1104(A)(2) ............................................... 21 |
| | A. | The Committee Misrepresents The Legal Standard Of Section 1104(a)(2) ......... 21 |
| | B. | Appointment Of A Trustee Is Not In The Best Interests Of All Constituents ...... 21 |
| VII. | | CONCLUSION ............................................................................................... 24 |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- ii -

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*In re Bergeron*,
   2013 Bankr. LEXIS 4556 (Bankr. E.D.N.C. Oct. 31, 2013)................................... 23

*In re Big M, Inc.*,
   2013 WL 1681489 (Bankr. D. N.J. April 17, 2013) ........................................ 23

## **STATE STATUTES**

Cal. Corp. Code
   § 12201 .......................................................................................... 4, 5, 12, 13
   § 12235 .......................................................................................... 15
   § 12243 .......................................................................................... 4, 5, 13
   § 12244 .......................................................................................... 4, 5, 13
   § 12453 .......................................................................................... 14, 15

Cal. Veh. Code §16053(a)........................................................................ 3-4, 10

## **FEDERAL STATUTES**

11 U.S.C. (Bankruptcy Code)
   § 1104(a) ........................................................................................ 8
   § 1104(a)(1)..................................................................................... 9, 10, 16
   § 1004(a)(2)..................................................................................... 21, 23

Fed. R. Bankr. P.
   7004(b)(9) ....................................................................................... 3
   7004(g) ........................................................................................... 3
   9017............................................................................................... 3

Fed. R. Evid.201 ................................................................................... 3

Local Rule 9013-3................................................................................... 3

## **OTHER AUTHORITIES**

7 *Collier on Bankruptcy* (16th ed. 2016)
   ¶ 1104.2[3][b][i] at p. 1104-10 ............................................................. 10
   ¶ 1104.2[3][b][ii] at p. 1104-10–11 ........................................................ 9
   ¶ 1104.2[3][c][i] at p. 1104-13–1104-14 ................................................ 10, 16, 20
   ¶ 1104.2[3][d][i] at p. 1104-17 ............................................................. 21
   ¶ 1104.2[3][d][ii] at p. 1104-18 ............................................................ 22
   ¶ 1104.2[3][d][ii] at p. 1104-17 ............................................................ 23

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- iii -

Case: 16-30063   Doc# 347   Filed: 10/10/16   Entered: 10/10/16 21:26:19   Page 4 of
28

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Yellow Cab Cooperative, Inc., debtor in possession herein ("YCC" or "Debtor"), submits its opposition to the Motion for Order Directing the Appointment of a Chapter 11 Trustee (the "Motion") submitted by the Official Committee of Unsecured Creditors (the "Committee").

As a threshold matter, virtually all of the malfeasance alleged by the Committee is not attributable to current management, as required to establish "cause" for appointment of a Chapter 11 trustee under Bankruptcy Code Section 1104. Rather, such conduct generally occurred in prior years with YCC under different management. And, the purported postpetition conduct is falsely alleged and could not reasonably constitute grounds for appointment of a trustee in any event.

Further, the Motion is based on allegations that are not only unsupported (and in many cases, demonstrably false), but are directly refuted by relevant evidence, including the deposition testimony of the Committee's primary declarant (Patrick O'Malley) in support of the Motion, and written correspondence involving the Committee's other declarant (John Fiero).

In addition, upon closer scrutiny, the purported malfeasance by YCC's management instead involves conduct reflecting reasonable business judgments that the Committee seeks to second guess with the benefit of 20/20 hindsight. For example, the Committee faults YCC for self-insuring its vehicles in accordance with California law, thus saving the company tens of millions of dollars of insurance premiums, where the alternative of obtaining additional third-party insurance would have only covered a small fraction of YCC's liabilities due to standard policy limits, thereby resulting in a <u>net negative impact of tens of millions of dollars to YCC</u>.

The Committee's contentions concerning patronage distributions historically paid to YCC's members (which terminated over one year ago) are also meritless. In this regard, the Motion mischaracterizes the testimony of Pamela Martinez, and inexplicably ignores testimony directly contradicting her alleged "admissions." Moreover, the Committee's argument that such distributions were excessive because they were more than the Debtor's net income is refuted by controlling law providing for patronage distributions based on the recipients' business transacted with the Debtor, rather than accounting profits. The Committee's financial adviser has now acknowledged this discrepancy, and admitted that it has not analyzed the amounts it believes

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

1

were payable under applicable statutes. Likewise, the Committee's financial adviser admits it is unable to establish YCC's insolvency at the time of any of the distributions, a necessary prerequisite to recovering any amounts claimed to be excessive. The Committee's "Monday morning quarterbacking" regarding YCC's investments in SFGC and ATD are similarly flawed.

Equally baseless are the Committee's allegations of the Debtor's postpetition malfeasance. The Committee's primary argument in this regard is limited to speculation regarding internal correspondence transmitted to YCC's members (improperly disclosed by the Committee) regarding a contemplated lease with its medallion holders, which never came to fruition. Similarly specious are the Committee's accusations regarding YCC's failure to challenge the adjustment to fair market rent owed under the lease for its primary business location, which was made in accordance with the express terms of the lease and the procedures required by this Court's Order. In fact, the Committee assented to the stipulated order providing for the rent to be adjusted (with the estate retaining the right to retroactively challenge such adjustment). Moreover, the Committee's financial adviser admits it has not analyzed the fair market rent, and has no basis to conclude that the adjusted rent amount is excessive, and instead acknowledges that the amount is consistent with the value of the subject property set forth in his declaration.

The Committee's allegations of "the Debtor's adversarial and secretive posture against creditors" are frivolous. For example, contrary to the Committee's (unsupported) assertion that the Debtor's proposed Chapter 11 Plan "was submitted without input from the Committee," the written correspondence between counsel demonstrates the Committee's steadfast refusal to even discuss a potential Chapter 11 plan despite YCC's repeated requests over a six-month period.

In short, the Committee cannot establish "cause" for the extraordinary remedy of displacing YCC's management and appointing a Chapter 11 trustee. Further, appointment of a trustee would not be in the best interest of the estate's constituents, in view of the substantial additional costs involved, including the fees that would be incurred by a trustee and their professionals, as well as the disruption to YCC's business operations in having a trustee without experience or expertise in operating in the complex and highly regulated taxi cab business.

The Motion is meritless and should be denied.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 2 -

Case: 16-30063   Doc# 347   Filed: 10/10/16   Entered: 10/10/16 21:26:19   Page 6 of
28

## II.     THE MOTION SHOULD BE REJECTED AS PROCEDURALLY DEFECTIVE

Bankruptcy Local Rule 9013-3 requires "paper service" of a motion in a contested matter, such as the Motion, rather than serving it through ECF procedures. *See* (Official) Commentary to BLR 9013-3 ("Service of papers . . . that commence a contested matter under Bankruptcy Rule 9014, e.g., a motion for stay relief or objection to claim, are not governed by FRCivP 5, and must still be made by paper. . . .") (emphasis added).[1]

According to the Certificate of Service filed on September 23, 2016 (Docket No. 331)[2], with the exception of two parties (GE Capital Information Services and Creditors Southern Counties Oil Company), the Committee failed to provide paper service of the Motion (or its supporting papers) to anyone. Rather, it served all other parties by ECF or email. Based on the Committee's failure to comply with basic service requirements (which implicate due process), the Motion should be denied without prejudice to the Committee renewing it with proper service.

## III.    THE ALLEGATIONS ON WHICH THE MOTION IS BASED ARE UNSUPPORTED AND REFUTED BY THE ACTUAL EVIDENCE, INCLUDING THE TESTIMONY OF THE COMMITTEE'S PRIMARY DECLARANT

Even if the Court is inclined to consider the Motion despite its fatal procedural defects, it should be summarily rejected as unsupported. For the most part, the allegations purportedly supporting the relief requested by the Motion are unsupported,[3] and in many cases, they are false and refuted by the actual evidence. The following chart helps illustrate this[4]:

| Committee Allegation & Cite | Factual Correction | Basis for Correction[5] |
|---|---|---|
| "[F]or many years, YCC operated its fleet of taxis under a scheme of 'self-insurance.'" | At all relevant times YCC self-insured under applicable state law. | Calif. Vehicle Code §16053(a). Martinez. Decl. ¶ 3 & Ex. |

[1] The Committee also failed to serve the Motion and supporting papers on both the Debtor and its counsel as required by Bankruptcy Rule 7004(b)(9) & (g).

[2] YCC requests that the Court take judicial notice of any filings in this case referenced herein pursuant to Federal Rule of Evidence 201 and Federal Rule of Bankruptcy Procedure 9017.

[3] YCC is separately submitting objections to the Declarations of Patrick O'Malley ("O'Malley Decl.") and John Fiero ("Fiero Decl.") filed in support of the Motion, and requesting that material portions thereof by stricken under governing evidentiary rules.

[4] The failure to include a particular Committee allegation on this chart does not constitute YCC's admission or acknowledgment of the accuracy thereof.

[5] References to "Martinez Decl." and "Kaplan Decl." are to the Declarations of Pamela Martinez and Gary Kaplan, respectively, submitted in support of this Opposition. References to "O'Malley Tr." are to the transcript of the October 3, 2016 deposition of Patrick O'Malley (attached to Kaplan Decl. as Exhibit 1). References to "Martinez Tr." are to the transcript of the August 11, 2016 Rule 2004 examination of Pamela Martinez (Docket No. 305-1).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

| | | |
|---|---|---|
| (O'Malley Decl. 2:19-20) | | 1 |
| | Mr. O'Malley is admittedly unaware of applicable California law regarding self-insurance certification. | O'Malley Tr. at 45:8-20 |
| | Committee has not analyzed YCC compliance with self-insurance obligations but has no reason to believe lack of compliance. | O'Malley Tr. at 45:21-46:1; 47:20-48:10 |
| "[T]he Debtor faces literally tens of millions of dollars of otherwise uninsured claims because only the first $250,000 of any accident claim was covered by the Cayman insurance company." (O'Malley Decl. 2:21-23) | Mr. O'Malley acknowledges "tens of millions of dollars of otherwise uninsured claims" exaggerates the amount of YCC's liabilities. | O'Malley Tr. at 53:6-14; 55:10-19; 55:20-25; 56:7-20; 57:2-5 |
| | Mr. O'Malley acknowledges that additional third-party insurance would have covered only a small fraction of YCC's liabilities due to standard policy limits ($1 million per claim), so purchase of such coverage, at a cost of tens of millions of dollars, would have had net <u>negative</u> impact of tens of millions of dollars to YCC. | O'Malley Tr. at 51:12-18; 52:14-17; 63:3-15; 75:18-25; 75:7-8 |
| | Mr. O'Malley admits no available Committee analysis of cost effectiveness of purchasing additional insurance coverage, but acknowledges there has been <u>no</u> year where payouts would have exceeded premium costs (about $5 million annually). | O'Malley Tr. at 50:20-51:24; 59:6-11; 60:13-17; 63:16-22; 64:14-18; 65:2-5; 65:10-14; 65:21-25; 66:5-10; 66: 12-17; 68:5-17; 72:3-8; 72:18-73:1; 73:11-13; 74:19-25; 75:1-17 |
| "In my opinion, what YCC should have done – and what careful and competent management would have done – is fund an insurance reserve to account for the fact that YCC was in the taxi cab business and operating without policy coverage above $250,000 per occurrence." (O'Malley Decl. 3:20-23) | Such reserves would have been contrary to GAAP accounting for YCC's contingent liabilities (requiring contingent liability recognition only when loss is both probable and can be reasonably estimated), as Mr. O'Malley acknowledges. | O'Malley Tr. at 97:21-98:14; 104:4-9 |
| | Establishment of such reserves would constitute improper deduction from members' patronage distributions under applicable statutes. | Cal. Corp. Code §§ 12201, 12243-12244. |
| | Mr. O'Malley admits Committee has not analyzed amount of purportedly appropriate reserves . | O'Malley Tr. at 70:16-25; 71:5-12; 71:8-12; 79:4-8; 95:15-96:7; 103:6-16; 108:14-18; 109:6-9 |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 4 -

| | | |
|---|---|---|
| "[A]ny assertion by the Debtor that the Debtor's audited financial statements establish solvency is suspect. The audited financial statements fail to account for any pending or contingent liabilities." (O'Malley Decl. 3:5-6) | Mr. O'Malley acknowledges no instance where YCC financial statements failed to reflect contingent liabilities in accordance with GAAP (contingent liabilities only reported where both probable and can be reasonably estimated). | O'Malley Tr. at 95:15-96:7; 97:21-98:14; 104:4-9; 107:2-7 |
| "[I]t is apparent that the Debtor did not retain sufficient reserves to meet its contingent liabilities, including the 2011 accident that resulted in a 2015 judgment in excess of $8 million." (O'Malley Decl. 6:11-13) | Mr. O'Malley acknowledges no instance where YCC failed to establish reserves for contingent liabilities in accordance with GAAP (requiring recognition of contingent liability only when loss is both probable and can be reasonably estimated). | O'Malley Tr. at 95:15-96:7; 97:21-98:14; 104:4-9; 107:2-7**.** |
| | Mr. O'Malley admits Committee has not analyzed amount of purportedly appropriate reserves, but admits that referenced claim was not subject to reasonable estimation (thus requiring reserve under GAAP) prior to judgment on 11/23/15, and may still not be in view of pending appeal. | O'Malley Tr. at 79:4-8; 95:15-96:7; 102:14-21; 103:6-16; 104:16-20; 106:11-14; 108:14-18; 109:6-9 |
| "[T]he Debtor made a practice of distributing all of its net income and, in some years, monies in excess of net income to medallion holders" (O'Malley Decl. 3:18-20) | Controlling statutes provide for patronage distributions based on members' "patronage" (business with) YCC, which is different than (and prior to determination of) net income, as Mr. O'Malley acknowledges. | Cal. Corp. Code §§ 12201, 12243-12244.  O'Malley Tr. at 88:5-11; 130:17-131:15; 132:12-14-133:13; 134:8-15; 175:4-11; 185: 186:7 |
| | Committee's own analysis reflects patronage distributions generally less than net income. | Docket No. 224 [filed under seal] at 1. |
| "[B]eginning in 2012, Ms. Martinez abandoned all pretense of properly calculating patronage dividends because such calculations yielded amounts that were insufficient to meet the demands of management.**"** (O'Malley Decl. 6:11-13) | Ms. Martinez testified she was not responsible for calculating patronage distributions.  Committee has no analysis of "properly calculated patronage dividends."  Mr. O'Malley acknowledges that multiple IRS audits of YCC have found no adjustments required with respect to reporting of patronage dividends. | Martinez Tr. at 11:3-6; 126:11-21; 47:13-48:6  O'Malley Tr. at 131:22-132:8; 163:6-14; 184:7-13; 186:17-187:7  O'Malley Tr. at 163:14-164:6. |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 5 -

| | | |
|---|---|---|
| "Notwithstanding this obviously flawed valuation methodology [as to broker's determination of fair market rent adjustment under lease], I am not aware that the Debtor has done anything to challenge the improper valuation or the imposition of increased rent." (O'Malley Decl. 5:24-6:2) | Rent adjusted in accordance with lease and procedures required by Court's Order.<br><br>Committee assented to the stipulated order providing for rent adjustment (with estate retaining the right to retroactively challenge such adjustment).<br><br>Mr. O'Malley admits Committee has not analyzed value of the property but has no basis to challenge amount of broker's valuation<br><br>Mr. O'Malley admits Committee has not analyzed fair rental value of the property, but acknowledges adjusted rent determined by broker is consistent with $25 million valuation of property stated in ¶ 8 of his declaration. | Order Granting Debtor's Motion to Extend Time to Assume or Reject Nonresidential Real Property Lease [Taxi Property Company] filed 6/8/2016 (Dkt. # 201) ¶3. Stipulation Further Extending Time for Debtor To Assume Or Reject Nonresidential Real Property Lease Until September 30, 2016; Order Thereon filed 8/30/16 (Docket #277) ¶¶ B&C.<br><br>O'Malley Tr. at 122:17-124:10<br><br>O'Malley Tr. at 44:21-45:1; 125:20-126:2; 127:1-129:23 |
| "The Debtor's Chapter 11 Plan of Reorganization Dated August 22, 2016 (the 'Plan') was submitted without input from the Committee." (MPA 8:19-20) | Committee refused to discuss a proposed Chapter 11 plan, or participate in related mediation, despite YCC's repeated requests over a six-month period, as documented in email correspondence. | Kaplan Decl. ¶4 & Ex. 2. |
| "[T]his effort to take one of the estate's best and most easily proven claims (the Debtor's claims against the medallion holders for receipt of improper 'patronage distributions') and surrender them for no return value . . ." (MPA at 9:7-9) | Committee admittedly can provide no analysis regarding either element of such claims, i.e., (i) whether YCC received reasonably equivalent value in exchange for (each of the hundreds of) such transfers, and (ii) whether YCC was "insolvent" at the time of each such transfer.<br><br>Committee acknowledges YCC's audited financial statements reflect positive new worth (assets in excess of liabilities) during most of relevant time period.<br><br>Committee acknowledges YCC | O'Malley Tr. at 24:20-25; 42:22-43:10; 110:17-19; 173:10-23<br><br>O'Malley Tr. at 113:20-114:2; 120:12-14; Docket No. 224 [filed under seal] at 2<br><br>O'Malley Tr. at 138:2-12; |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 6 -

| | | |
|---|---|---|
| | may have received reasonably equivalent value for transfers. | 141:12-16; |
| | Plan proposes option for Holders of Class 4 Interests to exchange pro rata shares in Reorganized Yellow Cab for release of Avoidance Actions, rather than for no return value. | Quoted at MPA, 9:1-5. |
| "[E]ach member of the Debtor's board of directors (including company president Pam Martinez) owns a medallion and, as a member of the cooperative, received alleged 'patronage distributions' while the Debtor was insolvent." (MPA 10:4-7) | Committee admittedly can provide no analysis regarding whether YCC was "insolvent" at the time of each of the subject transfers." | O'Malley Tr. at 24:20-25; 42:22-43:10; 110:17-19; 112:15-113:1 |
| "The Committee inquired whether Committee counsel could attend the first meeting with the purchaser as an observer and on the understanding that no comments would be made at the meeting. The Debtor turned this request down, and then declined to provide any written report of the meeting, requiring instead that any debriefing be by telephone." (MPA 9:14-18) | Committee fully informed of proposed sale discussions, but refused to participate in such discussions or provide any input regarding proposed sale or sale price, contending that only a Chapter 11 trustee could consider a sale, as documented in email correspondence. (YCC reported certain sensitive information orally to Committee in view of Committee's prior improper disclosure of confidential writings.[6]) | Kaplan Decl. ¶5 and Ex. 3. |
| "Debtor's resistance to the Committee's request to succeed to the attorney-client privilege in connection with control of the claims (which are the only asset likely to produce a meaningful dividend in this case). If the Debtor had the real interests of this insolvent estate at heart – and cared about the dividend – it would not have opposed the relief sought by the Committee." (MPA | Court rejected Committee's "unprecedented request for [YCC's] privileged documents," agreeing with reported authority that even in cases where a Chapter 11 trustee is appointed, a committee asserting causes of action on the estate's behalf does not succeed to the debtor's attorney-client privilege. | 9/9/16 Order (Dkt. # 302) at 4. |

---

[6] Indeed, the Committee has now publicly revealed the confidential identity of the asset purchaser. *See* MPA at 5, 9.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 7 -

| 9:22-26) | | |
|---|---|---|
| "[T]aking the Debtor's equity/medallion holders and turning them into administrative creditors of the estate was [not] an appropriate discharge of [YCC's Board's] fiduciary duties[]" [referencing 5/26/16 internal YCC letter discussing contemplated lease with medallion holders] (MPA 7:11-13) | The contemplated lease was never effectuated, but even if it had been, it would have been entirely separate from membership rights, as the letter makes clear. Rather, the lease would be compensation for YCC renting medallions from medallion holders, similar to other San Francisco taxicab companies. | Martinez Decl. ¶ 4. |
| "Today, Mr. Mellegard is the General Manager of the Debtor." (MPA 5:21) | Paul Gillespie is the General Manager of the Debtor, and has been since early September 2016. | Martinez Decl. ¶7. |
| "Mr. [Nate] Dwiri . . . is in constant communication with Ms. Martinez." (MPA 5:21-22) | Ms. Martinez is not in constant communication with Mr. Dwiri. | Martinez Decl. 5. |

In view of the foregoing, virtually all of the material allegations forming the basis for the Motion are unsupported, and for the most part, untrue. The Motion should accordingly be denied.

## IV. THE ALLEGED MALFEASANCE GENERALLY DID NOT INVOLVE CURRENT MANAGEMENT, AND THUS CANNOT CONSTITUTE CAUSE FOR APPOINTMENT OF A TRUSTEE UNDER BANKRUPTCY CODE SECTION 1104

Because almost all of the malfeasance alleged by the Committee in the Motion is not attributable to current management, it cannot constitute "cause" for appointment of a Chapter 11 Trustee under Bankruptcy Code Section 1104(a)(1), which defines such term in relevant part as "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case" (emphasis added). Indeed, with limited exceptions (separately discussed below), all of the conduct of which the Committee complains occurred in prior years (see MPA at 2-6), while YCC was under different management.

Pamela Martinez was appointed as the Debtor's President in late November 2015 (as noted in earlier filings in this case), just two months before this case was filed, and, YCC's General Manager, Paul Gillespie, has only held that position since early September 2016, (Martinez Decl. ¶¶ 6, 7), contrary to the Committee's contention that "Mr. [Hal] Mellegard is the General Manager of YCC" (MPA at 5).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 8 -

Case: 16-30063    Doc# 347    Filed: 10/10/16    Entered: 10/10/16 21:26:19    Page 12 of 28

As explained by a leading bankruptcy treatise:

> In authorizing appointment of a Trustee for cause, section 1104(a)(1) focuses on current management of the debtor rather than on any misdeeds of past management. Thus the fact that the prior management of the debtor might have been guilty of fraud, dishonesty, incompetence, or gross mismanagement does not provide grounds for the appointment of a trustee under section (a)(1), as long as the court is satisfied that the current management of the debtor is free from the taint of prior management. The Code's emphasis on new management means that even when the new management was selected by the former, tainted management, the imposition of a trustee might not be required.

7 *Collier on Bankruptcy* ¶1104.2[3][b][ii] at p. 1104-10—11 (16th ed. 2016) (citations omitted),

Further, the four alleged bases of YCC's post-petition malfeasance cannot constitute cause for appointment of a Chapter 11 trustee. Rather, as discussed *infra*, they involve: (1) internal correspondence to YCC's members regarding a <u>contemplated</u> lease with its medallion holders which never came to fruition; (2) YCC's payment of adjusted fair market rent in accordance with the express terms of a lease and this Court's Order, as to which the Committee itself assented (and which preserves the estate's right to retroactively challenge such adjustment); (3) YCC's submission of a proposed Chapter 11 plan as to which the Committee now objects and allegedly did not have input, although written correspondence instead reflects the Committee refused YCC's repeated requests for negotiation over a six month period; and (4) YCC's discussions with a prospective purchaser of its assets, allegedly without Committee inclusion, although written correspondence demonstrates the Committee's steadfast refusal to participate in such discussions or provide any input. None of these matter can reasonably constitute "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor."

Based on the foregoing, the Committee cannot possibly establish "cause" for appointment of a trustee under Section 1104(a)(1), thereby providing further grounds to deny the Motion.

## V. ALL OF THE MALFESANCE ALLEGED BY THE COMMITTEE INVOLVES EXERCISE OF REASONABLE BUSINESS JUDGMENT WHICH CANNOT BE GROUNDS FOR APPOINTMENT OF A TRUSTEE UNDER SECTION 1104

It is well established that "[t]he appointment of a trustee in a chapter 11 case is an extraordinary remedy. . . . [T]here is a strong presumption that the debtor should be permitted to remain in possession absent a showing of need for the appointment of a trustee or a significant

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 9 -

1  postpetition change in the debtor's management." *7 Collier on Bankruptcy* ¶1104.2[3][b][i] at p.

2  1104-10 (16th ed. 2016) (citing cases, including those cited in the MPA). As explained by *Collier*:

3  
> [S]ection 1104(a)(1) is not intended to suggest that a court should order the appointment of a trustee whenever management has, to any degree, mismanaged the debtor's affairs. Instead, the reference to "gross mismanagement" represents tacit recognition that some degree of mismanagement exists in virtually every insolvency case and that mere mismanagement does not, by itself, constitute cause. . . . Simply underperforming the market does not constitute gross mismanagement and should not be grounds for appointment of a trustee, especially where the debtor is close to filing a Chapter 11 plan.

9  *7 Collier on Bankruptcy* ¶1104.2[3][c][i] at p. 1104-13—1104-14 (16th ed. 2016) (citations

10  omitted)

11      Even viewing the conduct alleged by the Motion in a light most favorable to the

12  Committee, it cannot reasonably be deemed gross mismanagement or otherwise constitute

13  grounds for appointment of a trustee under Section 1104(a)(1). Rather, as discussed below, in

14  each case, the purported malfeasance by YCC's management involved the exercise of reasonable

15  business judgment, rather than gross mismanagement or other cause justifying the extraordinary

16  remedy of appointing a Chapter 11 trustee.

17      A.    **YCC's Decision To Self-Insure For Auto Insurance, Resulting In A Net Positive Benefit Of $37 Million, Cannot Constitute Gross Management Or Otherwise Be Cause For Appointment Of A Chapter 11 Trustee**

19      The primary prepetition conduct alleged by the Committee as a basis for appointing a

20  Chapter 11 trustee is YCC historically self-insuring a portion of its auto insurance. MPA at 2-3,

21  13. However, as explained below, such self-insurance, which was done in accordance with

22  California law, provided a <u>net financial benefit of tens of millions of dollars for YCC</u>, based on

23  the cost of acquiring additional third party insurance, which would have only covered a small

24  fraction of YCC's liabilities, <u>as the Committee's financial advisor has acknowledged</u>.

25      As reflected in YCC's most recent audited annual financial statements (which the

26  Committee filed in this case, as Docket No. 91 at pp. 17 n. 9), until mid-February 2015, YCC

27  self-insured its auto liability insurance in accordance with California law. *See* Calif. Vehicle

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 10 -

Case: 16-30063   Doc# 347   Filed: 10/10/16   Entered: 10/10/16 21:26:19   Page 14 of 28

Code §16053(a);[7] Martinez Decl. ¶3 & Exhibit 1 (Certificate of Self-Insurance exemplar). The Committee admittedly has no basis for asserting that YCC failed to comply with requirements for self-insurance under California law at any relevant time. *See* Part III, *infra*.

As further stated in YCC's financial statements: "[s]tarting mid-February 2015, [YCC] [was] paying a total of $455,938 a month [$5.48 million annually] in commercial auto insurance premiums." As also noted there, such insurance coverage is limited to $1 million per incident. *Id.* Since February 2016, YCC's commercial auto insurance premiums have been paid at the rate of about $441,681 monthly ($5.3 million annually), with such coverage also limited to $1 million per incident. Martinez Decl. ¶8 Based on these figures, if YCC had purchased comparable commercial insurance coverage for the entire 8-year period raised by the Committee (April 2007-April 2015), even adjusting for inflation (*i.e.*, assuming average annual premium costs of about $5 million), the cost of such premiums would have been approximately $40 million.

Such hypothetical coverage would have only covered YCC's liability for incidents between $250,000 (the per-incident coverage by YCC's captive insurance company, as noted in the MPA at 2) and $1,000,000 (the standard coverage limit per incident, as noted above). Based on the Committee's own analysis of the resolved personal injury claims against YCC for this 8-year period (O'Malley Tr. Ex. 8), the maximum aggregate coverage (for liabilities between $250,000 and $1,000,000 per incident) would have been no more than $3 million (based on the eight claims with judgment or settlement amounts more than $250,000).[8]

Thus, the net impact to YCC of purchasing such additional commercial coverage for the subject period would have been <u>negative $37 million</u> ($40 million - $3 million). Therefore, even with the benefit of 20/20 hindsight, the Committee cannot reasonably argue that YCC's decision to self-insure in accordance with California law--thereby saving the company some $37 million—constitutes gross mismanagement. Indeed, the Committee's financial adviser acknowledges that

---

[7] Section 16053(a) provides in relevant part: "(a) The [D]epartment [of Motor Vehicles] may in its discretion, upon application, issue a certificate of self-insurance when it is satisfied that the applicant in whose name more than 25 motor vehicles are registered is possessed and will continue to be possessed of ability to pay judgments obtained against him or her in amounts at least equal to the amounts provided in Section 16056. The certificate may be issued authorizing the applicant to act as a self-insurer for either property damage or bodily injury or both."

[8] Further, this figure presumably overstates YCC's actual liability, as it counts at full value the judgments of *Fua* and *Oliverio*, although both are currently on appeal.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 11 -

1    it has no proper basis to contend otherwise. *See* Part III, *infra.*

2         Likewise, the Committee's financial adviser acknowledges that YCC did not fail to reserve

3    for contingent personal injury claims in accordance with GAAP, and admitted that the Committee

4    has not analyzed the reserves it believes should have been maintained by YCC. *See* Part III, *infra.*

5    Further, YCC's discretionary set aside of such reserves apparently would have been an improper

6    deduction from members' patronage rights under applicable statutes (Cal. Corp. Code 12201,

7    12243-12244[9]), although the Committee has not analyzed that issue. *See* Part III, *infra.*

8         In view of the above, YCC's self- insurance of auto insurance cannot properly constitute

9    cause for the extraordinary remedy of appointing a Chapter 11 trustee.

10       **B.**    **YCC's Sale Of Property Nine Years Ago At Its Appraised Value, In Which It**
                  **Realized A $4.7 Million Gain And Obtained Financial, Tax And Other**
11                   **Benefits, Cannot Be Cause For Appointment Of A Chapter 11 Trustee**

12         The Committee additionally contends that "the Debtor's management has . . . intentionally

13    transferred its most valuable (and likely to appreciate) asset into a sister company immune to the

14    ordinary reach of creditors." MPA at 13. This relates to the YCC's sale of the real property

15    known as 1200 Mississippi Street, San Francisco (the "Property") in early 2007. MPA at 3. In

16    fact, as the Committee's financial adviser has acknowledged, the Property was sold at its

17    appraised value as determined by an independent certified appraiser (which valuation the

18    Committee does not dispute), and YCC recognized a <u>gain</u> of $4.7 million on such transaction, as

19    reflected on its audited financial statements (which the Committee also does not dispute). *See*

20    Part III, *infra.;* 'O'Malley Decl. Ex. A at 6 n. 2 (YCC audited financial statements, stating "the

21    total sale price is the market (appraised) value of the land and building of $12,100,000"; "In

22    accordance with accounting principles the entire book profit of $4,644,371 was reported in the

23    year of sale (fiscal year ended April 30, 2007)"; O'Malley Tr. 152:9-22; 153:22-154:1;156:10-19

24    (acknowledging same) & Ex. 17 (appraisal valuing Property at $12.1 million as of 4/30/07).[10]

25         Similarly meritless are the Committee's attempts to paint this transaction as an effort to

26    defraud creditors, based on selectively quoting a passage from a 2007 letter out of context. That

---

[9] These statutes are quoted in the immediately succeeding section of this Opposition.
[10] The Committee's assertion that the value of the Property was "likely to appreciate" is unsupported. Indeed, the unpredictability of future real estate values is evidenced by the market collapse following the 2007 sale transaction.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 12 -

letter (attached as Exhibit A to Fiero Decl.) discusses the various tax, financial and other business reasons for such transaction (*e.g.*, substantially lowering YCC's debt service obligations by the purchaser assuming an $8 million debt secured by the Property, as well as tax benefits associated with the transaction). The Committee inexplicably ignores all of that. However, even focusing only on the language cited by the Committee, it presumably is not gross mismanagement (and indeed, is commonplace) to separate real property from an entity's operating assets, so that the entity's use of such property (pursuant to a lease) is not jeopardized by external events (*e.g.*, a judgment creditor's enforcement action) which could threaten ongoing business operations.

Thus, YCC's 2007 sale of the Property cannot properly constitute cause for the extraordinary remedy of appointing a Chapter 11 trustee.

**C.** **The Committee's Contentions Regarding YCC's Historic Payment Of Patronage Distributions Are Erroneous, And Do Not Constitute Grounds For Appointment Of A Trustee**

Also meritless is the Committee's assertion of cause for appointment of a trustee because "the Debtor's management has . . . distributed more cash than it had net income and also paid alleged patronage dividends without regard to the carefully crafted formula; .. . paid out excessive dividends to equity without regard for the harm suffered by Ms. Fua in 2011." MPA at 13.

As a threshold matter, pursuant to applicable statutes (which the MPA recognizes, at 4) patronage distributions are based on cooperative members' patronage of (*i.e.*, business with) YCC, rather than related to accounting profits. California Corporations Code Section 12244 provides that "'Patronage distributions' means any transfer made to a patron of the corporation the amount of which is computed with reference to the patron's patronage of the corporation. Section 12243 in turn provides in relevant part: ". . . the corporation's 'patrons' are those persons whose products or services are so marketed, processed, or handled by the corporation. 'Patronage' of a patron is measured by the volume or value, or both, of . . . such products and services provided by the patron to the corporation for marketing." Thus, patronage distributions are based on members' business transacted with YCC, rather than dependent on YCC's net income.[11]

[11] See also Corporations Code Section 12201 (stating in relevant part: "the earnings, savings, or benefits of the corporation shall be used for the general welfare of the members or shall be proportionately and equitably distributed to some or all of its members or its patrons, based upon their patronage (Section 12243) of the corporation, in the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 13 -

1    Indeed, YCC's financial statements (*e.g.*, Docket No. 91; O'Malley Decl. Exs. A &C;

2    O'Malley Tr. Ex. 13) uniformly reflect that patronage distributions were deducted as a line item

3    on its Income Statement (after calculation of operating income), prior to calculating income tax

4    expense/benefit, and, ultimately, net income.  (By comparison, dividends payable to shareholders

5    in a for-profit company are determined after calculating--and typically based on--net income.)   In

6    fact, the Committee's financial adviser has acknowledged the discrepancies between patronage

7    distributions and net income, and admitted that the Committee has not analyzed the amounts it

8    believes should have been paid under "the carefully crafted formula." *See* Part III, *infra*.

9    Therefore, the Committee's contention that the patronage distributions that YCC's

10   members received were excessive because they exceeded net income is fundamentally flawed.

11   Similarly false is the Committee's claim that "the Debtor made a practice of distributing all of its

12   net income and, in some years, monies in excess of net income to medallion holders . . . "  MPA

13   at 3.  In fact, the Committee's own analysis reflects that patronage distributions have generally

14   been less than net income.  *See*  Docket No. 224 ["DSI Presentation"; filed under seal pursuant to

15   Court's 8/12/16 Order, Docket No. 239] at 1 (reflecting patronage distributions less than net

16   income during three of last five fiscal years--the period the Committee is using for avoidance

17   actions to recover patronage distributions--and during five of the last ten fiscal years).

18   With regard to the Committee's allegation that YCC "paid alleged patronage dividends

19   without regard to the carefully crafted formula" which is purportedly based on the deposition

20   testimony of Pamela Martinez (MPA at 4-5), as noted above, Ms. Martinez actually testified she

21   was not responsible for calculating patronage distributions (Martinez Tr. at 11:3-6; 126:11-21;

22   47:13-48:6), and the Committee's financial adviser has acknowledged it has not analyzed the

23   amounts it believes were properly payable under applicable statutes.  *See* Part III, *infra*.

24   Similarly baseless is the Committee's contention that YCC's management "paid out

25   excessive dividends to equity without regard for the harm suffered by Ms. Fua in 2011."

26   Although the Committee offers no legal authority for this argument, based on similar arguments

27   made by the Committee (*e.g.*, Docket No. 227), it is apparently based on California Corporations

28   form of cash, property, evidences of indebtedness, capital credits, memberships, or services.").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 14 -

Code Section 12453, which prohibits distributions (<u>other than patronage distributions</u>) to patrons "out of earnings of the corporation on nonmember patronage" that result in the corporation "be[ing] unable to meet its liabilities (except those whose payment is otherwise adequately provided for) as they mature".[12] However, the Committee provides <u>no</u> support for this allegation, and it admittedly has no analysis regarding either (i) distributions purportedly paid to YCC members out of earnings of the corporation on nonmember patronage, or (ii) determination of YCC's anticipated liability on the *Fua* claim at the time of any such distribution. *See* part III. *infra.* Further, there is no basis for concluding that YCC failed to establish proper reserves for contingent claims (such as *Fua's*), which, under GAAP, is not required until a loss is probable and the amount is subject to reasonable estimation, as the Committee's financial adviser has acknowledged. *Id.* The Committee's financial adviser admits that this did not occur before November 23, 2015 (when judgment was entered), which is <u>after</u> YCC ceased paying patronage distributions in September 2015. *Id.*

Thus, YCC's historical payment of patronage distributions cannot properly constitute cause for the extraordinary remedy of appointing a Chapter 11 trustee.

**D.** **<u>The Committee's Second Guessing Of YCC's Investments In SFGC And ATD Is Unsupported And Can Not Be Grounds For Appointment Of A Trustee</u>**

The Committee additionally argues that YCC's investments in SFGC and ATD provide cause for appointment of a Trustee. MPA at 4, 6, 13. As a threshold matter, the Committee's allegations are unsupported, and generally based on "information and belief." Further, the Committee inexplicably ignores the testimony it has elicited from the Debtor regarding such matters. For example, at the February 16, 2016 Meeting of Creditors pursuant to Bankruptcy Code Section 341, in response to examination by Committee counsel, the Debtor's Pamela Martinez explained some of the benefits to YCC of outsourcing dispatch functions to ATD,

---

[12] Section 12453 provides in relevant part: "Neither a corporation nor any of its subsidiaries shall . . . make a patronage distribution to members <u>out of earnings of the corporation on nonmember patronage</u>, or make a distribution, if the corporation . . . is, or as a result thereof would be, likely to be unable to meet its liabilities (except those whose payment is otherwise adequately provided for) as they mature." (emphasis added) Section 12235 provides "'<u>Distribution</u>' means the distribution of any gains, profits or dividends to any member as such, but <u>does not include patronage distributions</u>." (emphasis added)

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 15 -

Case: 16-30063   Doc# 347   Filed: 10/10/16   Entered: 10/10/16 21:26:19   Page 19 of 28

1    including lower wage costs and reduction in drivers bribing dispatchers for additional fares. *See*

2    Docket No. 305-3 at 32:15-33:5.

3         In any event, the Committee's "Monday morning quarterbacking" regarding these matters

4    (*e.g.*, complaining about losses on YCC's 2011 investment in SFGC) cannot properly constitute

5    cause for appointment of a Trustee. As noted above, "section 1104(a)(1) is not intended to

6    suggest that a court should order the appointment of a trustee whenever management has, to any

7    degree, mismanaged the debtor's affairs. Instead, the reference to 'gross mismanagement'

8    represents tacit recognition that some degree of mismanagement exists in virtually every

9    insolvency case and that mere mismanagement does not, by itself, constitute cause." 7 *Collier*

10   *on Bankruptcy* ¶1104.2[3][c][i] at p. 1104-13 (citations omitted).

11   **E.     YCC's Payment Of Fair Market Rent In Accordance With The Lease And**
          **This Court's Orders (With The Committee's Assent) Cannot Be Cause For**
12        **Appointment Of A Trustee**

13        In support of its Motion, the Committee also asserts that "the Debtor's management has . .

14   . agreed to revised rental terms for [the Property] that could never be paid under the Debtor's

15   current cash flow structure based upon an obviously flawed value analysis," and "[t]he

16   postpetition malfeasance events include . . . the mishandling of the [the Property] lease re-

17   valuation." MPA at 13-14. These arguments are frivolous. In fact, the adjustment to fair market

18   rent under the lease was made in accordance with its express terms and procedures required by

19   this Court's Order. Indeed, the Committee itself agreed to the stipulated order providing for the

20   rent to be adjusted (with the estate retaining the right to retroactively challenge such adjustment).

21        Specifically, Paragraph 3 of the Court's Order Granting Debtor's Motion to Extend Time

22   to Assume or Reject Nonresidential Real Property Lease [Taxi Property Company] filed June 8,

23   2016 (Docket No. 201) provides as follows:

24             The amount of Fair Market Rent (as defined in Section 1.7(b) of the
               Lease) owed by YCC under the Lease beginning on September 1,
25             2016 shall be determined by July 15, 2016. Marcella Harrison of
               the Kidder Mathews firm shall be the mutually agreed real estate
26             broker for determining the Fair Market Rent pursuant to Section
               1.7(b) of the Lease.
27

28        As the Motion acknowledges, the rent under the lease was adjusted effective September 1,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE
- 16 -

Case: 16-30063   Doc# 347   Filed: 10/10/16   Entered: 10/10/16 21:26:19   Page 20 of
28

1   2016 based on the Fair Market Rent determination by Ms. Harrison (attached to the O'Malley

2   Decl. as Exhibit I).

3           Paragraphs B. and C. of the Stipulation Further Extending Time for Debtor To Assume Or

4   Reject Nonresidential Real Property Lease Until September 30, 2016; Order Thereon filed August

5   30, 2016 (Docket No. 277) [expressly approved by the Committee] provides as follows:

6               The Debtor shall pay rent for the months of September 2016 and
                October 2016 within three business days of the first day of the
7               applicable month by making a cash payment in the amount of
                $120,000 per month.
8
                All parties reserve their respective rights with respect to this matter,
9               including, without limitation: (1) the Debtor's and/or Committee's
                potential claim that the amount of the Fair Market Rental Valuation
10              is excessive, (2) any other claims which the Debtor's bankruptcy
                estate may hold against TPC, and (3) any claims or set-offs which
11              TPC may hold against the Debtor's bankruptcy estate, including the
                claim that it is due rent at the Fair Market Rental Valuation from and
12              after September 1, 2016.

13          Moreover, the Committee offers no basis for its contention that the adjusted rent "could

14  never be paid under the Debtor's current cash flow structure."  In fact, the Debtor has already

15  timely paid the adjusted rent required under the Stipulated Order for September and October

16  2016.  Martinez Decl. ¶9.

17          Similarly unsupported are the Committee's allegations of "an obviously flawed value

18  analysis."  Rather, the Committee's financial adviser admits that it has not analyzed the fair

19  market rent of the Property, and has no grounds to conclude that the adjusted rent is excessive.

20  *See* Part III, *infra*.  Indeed, the Committee's financial adviser acknowledges that the amount

21  determined by Ms. Harrison is consistent with the $25 million valuation of the Property in his

22  own declaration, which the Motion relies on for other purposes.  *See* Part III, *infra*.; MPA at 3.

23          As a result, YCC's payment of adjusted fair market rent in accordance with the lease and

24  this Court's orders (as to which the Committee agreed) cannot constitute cause for the

25  extraordinary remedy of appointing a Chapter 11 trustee.

26      **F.    The Committee's Speculation Concerning YCC's Internal Correspondence
                As To A Contemplated Lease With Medallion Holders Cannot Be Grounds
27              For Appointment Of A Trustee**

28          The Committee argues: "[t]he postpetition malfeasance events include . . . the preparation

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE                    - 17 -

Case: 16-30063   Doc# 347   Filed: 10/10/16   Entered: 10/10/16 21:26:19   Page 21 of
                                            28

1    and dissemination of the May 26 Letter . . . [from YCC to its members; attached as Ex. B to

2    Fiero Decl.]." MPA at 14. Setting aside the impropriety of the Committee's improper disclosure

3    of a confidential internal YCC document (as discussed in Docket No. 210), this issue is a "red

4    herring" because (as noted above) the contemplated lease with medallion holders discussed in

5    that letter never came to fruition. Martinez Decl. ¶ 4. Indeed, when the Committee previously

6    raised this issue (Docket No. 208), the Court denied the Committee's request for an Order to

7    Show Cause at a July 8, 2016 hearing, in view of the absence of an actual issue.

8         In any event, the Committee's allegations regarding this correspondence are (yet again)

9    unsupported and false. For example the Committee's claim that the contemplated lease would

10   "[T]ak[e] the Debtor's equity/medallion holders and turn[] them into administrative creditors of

11   the estate" (MPA at 7) is nonsense. Instead, the letter makes clear that the envisioned lease

12   would be optional for medallion holders, and entirely separate from their rights on account of

13   membership in YCC. The letter also reflected that such lease would be compensation for

14   YCC's future use of medallions (similar to other San Francisco taxicab companies), rather than

15   payment on account of prior membership interests.

16        Thus, the subject letter cannot be cause for the extraordinary remedy of appointing a

17   Chapter 11 trustee.

18   **G.    The Committee's Allegations Regarding YCC's Proposed Chapter 11 Plan**
         **And Related Negotiations With The Committee Are False, And Cannot**
19       **Constitute Cause For Appointment Of A Trustee**

20        The Committee asserts that cause exists for appointing a trustee based on "The Debtor's

21   Adversarial and Secretive Posture Against Creditors" citing as an example: "[t]he Debtor's

22   Chapter 11 Plan of Reorganization Dated August 22, 2016 (the 'Plan') was submitted without

23   input from the Committee." MPA at 8. This allegation (as to which the Committee offers no

24   support) is a blatant falsehood.[13] In fact, as indisputable demonstrated by written (email)

25   correspondence between counsel, the Committee expressly refused to discuss a proposed Chapter

26   11 plan, or to even participate in mediation regarding such matters, despite YCC's repeated

27

28   _____
     [13] Such assertion presumably was not included in the Fiero Decl. to avoid committing perjury.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE                          - 18 -

requests over a six-month period.[14]  Kaplan Decl. ¶4 and Exhibit 2.

Equally meritless is the Committee's allegation that "[t]he postpetition malfeasance events include . . . the Debtor's decision to go to the expense of filing a plan and disclosure statement that cannot be confirmed and that only further demonstrates how the Debtor is intertwined with the estate litigation target . . . ."  MPA at 14.  The sole reason offered for this contention is the Committee's assertion that Section D.2.a. of the Plan "take[s] one of the estate's best and most easily proven claims (the Debtor's claims against the medallion holders for receipt of improper 'patronage distributions') and surrender[s] them for no return value."  MPA at 9.

However, the Committee provides no basis for concluding either that (i) such claims are easily proven, or (ii) would be surrendered for no return value, and all indications are to the contrary.  As noted above, the Committee's financial advisor has admitted that it lacks any analysis regarding either of the necessary elements for establishing such claims, *i.e.*, (a) whether YCC received reasonably equivalent value in exchange for such transfer, or (b) whether YCC was "insolvent" at the time of each of the transfers (of which there thousands, over a four year period, to hundreds of YCC members).  *See* Part III, *infra.*  In fact, the Committee's financial adviser has acknowledged that (1) YCC's audited financial statements reflect it has a positive new worth (*i.e.*, assets in excess of liabilities) during most of the relevant time period, and (2) YCC may have received reasonably equivalent value in exchange for such transfers.  *See* Part III, *infra.*  Indeed, while the Committee has commenced more than a dozen adversary proceedings with respect to such claims (Docket Nos. 310-312, 316-326), there has been no determination on any issues in such cases (and the defendants have not even responded to the complaints yet).

Furthermore, contrary to the Committee's claim, the proposed Plan provides a potential option for Holders of Class 4 Interests to surrender their pro rata shares in Reorganized Yellow Cab in exchange for release of the Avoidance Actions against them, rather than for no return value, as reflected in the very language the Committee quotes from Section D.2.a..  MPA at 9.  Needless to say, there has be no Court determination that such a compromise is categorically

---

[14] The Committee's complaints regarding YCC's filing of the "unconfirmable" proposed Plan without Committee input is akin to the child that kills its parents and complains of being an orphan.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

1    unfair, and the viability of the Avoidance Actions is questionable, as noted above.

2            In any event, YCC's submission of a Plan as to which the Committee now objects (yet

3    refused to negotiate) cannot constitute cause for the extraordinary remedy of appointing a

4    Chapter 11 trustee.

5        **H.     The Committee's Allegations Regarding Its Participation In The Potential
                 Sale Of YCC's Asset Are False, And Cannot Constitute Cause For
6                Appointment Of A Trustee**

7            The Committee alleges that "[t]he postpetition malfeasance events include . . . the refusal

8    to let the Committee play a meaningful role in negotiating a potential sale in this case . . . ."

9    (MPA at 14).  This unsupported assertion is a blatant falsehood.[15]  Rather as demonstrated by

10   written (email) correspondence between counsel: (i) since April 2016, YCC proposed that the

11   Committee's professionals "take the lead in negotiating sale terms" for the potential sale of

12   YCC's assets in conjunction with a contemplated Chapter 11 plan, but the Committee never

13   responded, despite repeated requests,[16] and (ii) since August 2016, YCC has repeatedly

14   requested the Committee's input regarding a proposal to purchase YCC's assets, including the

15   Committee's views regarding the sale price, but the Committee has steadfastly refused to

16   respond, finally stating "the Committee's position is that a chapter 11 trustee is the appropriate

17   party to evaluate this proposal."  Kaplan Decl. ¶5 and Exhibit 3.[17]

18           The fallacy that YCC failed to discuss a potential sale of its assets with the Committee

19   cannot possibly be grounds for the extraordinary remedy of appointing a Chapter 11 trustee.[18]

20       **I.      The Committee's Contentions That The Debtor Is Not Maximizing The Value
21               Of The Estate For The Benefit Of Creditors Is Unsupported And Untrue**

22           The Committee asserts "the Debtors' postpetition conduct evidences the Debtors' focus in

23

24   [15] Such assertion presumably was not included in the Fiero Decl. to avoid committing perjury.
     [16] The Committee claim of "the Debtor's delay in moving this case forward" (MPA at 15) is thus the height of
25   hypocrisy.
     [17] The Committee's failure to engage regarding a proposed sale of YCC's operating assets is even more inexcusable
26   in light of their professionals expressly favoring such a sale.  Kaplan Decl. ¶5(e) and Exhibit 3.
     [18] In another "Trumpian" allegation, the Committee asserts "the time to assume or reject nonresidential real property
27   leases has expired and now the Debtor must attempt to delay this process with the consent of its landlord."  MPA at 15.
     In fact, the only lease that YCC has not yet assumed or rejected is for the Property required to operate its business,
28   the assumption of which the Committee has unequivocally opposed, and only begrudgingly assented to YCC's
     agreement with the landlord to extend the assumption/rejection deadline.  Kaplan Decl. ¶6.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE                    - 20 -

Case: 16-30063    Doc# 347    Filed: 10/10/16    Entered: 10/10/16 21:26:19    Page 24 of
                                          28

this case is something other than maximizing the value of the estate for the benefit of the Debtors' creditors. Such mismanagement and bad faith on the part of the Debtors [sic] make clear that the Debtors [sic] cannot be entrusted with managing the estates' [sic] assets and affairs, and constitute cause for the appointment of a trustee." MPA at 14.

As discussed above, all of the Committee's allegations regarding YCC's purported postpetition malfeasance are meritless. Nor is there any basis for concluding that YCC is not maximizing the value of the estate for the benefit of creditors. Thus, the Committee's allegation that YCC cannot be entrusted with managing the estate's assets and affairs is frivolous.

## VI. APPOINTMENT OF A TRUSTEE WOULD NOT BE IN THE BEST INTERESTS OF THE ESTATE AND ITS CONSITUENTS PURSUANT TO BANKRUPTCY CODE SECTION 1104(A)(2)

### A. The Committee Misrepresents The Legal Standard Of Section 1104(a)(2)

The Committee argues "[e]ven if there were insufficient 'cause' mandating the appointment of a trustee, a trustee should be appointed in the best interests of creditors under section 1104(a)(2)." MPA at 15. This misrepresents the applicable standard under Section 1104(a)(2), which provides that appointment of a Chapter 11 trustee is only appropriate (in the Court's discretion) if determined to be in the best interests of all constituents. As *Collier* notes:

> [I]t is important to remember that the "interests" standard requires a finding that appointment of a trustee would be in the interests of essentially all interested constituencies. Section 1104(a)(2) provides for the appointment of a trustee "if such appointment is in the interests of creditors, any equity security holders, *and* other interests of the estate." Use of the word "and" suggests that that creditors cannot on their own obtain the appointment of a trustee under this provision in order to disenfranchise equity security holders or other interests. Instead, appointment of a trustee must be in the interest of the estate generally in order to satisfy the statutory "interests" standard.

7 *Collier on Bankruptcy* ¶1104.2[3][d][i] at p. 1104-17 (16th ed. 2016) (citations omitted),

The Committee has failed to (and cannot, as discussed below) establish that the extraordinary remedy of appointment of a Chapter trustee would be in the best interests of all constituents in this case.

### B. Appointment Of A Trustee Is Not In The Best Interests Of All Constituents

As noted by Collier:

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 21 -

Case: 16-30063    Doc# 347    Filed: 10/10/16    Entered: 10/10/16 21:26:19    Page 25 of
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> The costs involved in a trustee's appointment are readily apparent. First there is the cost of the trustee itself. The trustee is also likely to retain counsel. . . . There are also the intangible costs of delay and "education" of the trustee who must learn about the business and the various constituencies in a case before the trustee can address the underlying issues. In addition, there is the even more intangible cost of divesting the debtor's owners and managers of control and influence in the chapter 11 process.

7 *Collier on Bankruptcy* ¶1104.2[3][d][ii] at p. 1104-18 (16th ed. 2016) (citations omitted),

Appointment of a Chapter 11 trustee here would not be in the best interest of the estate's constituents, in view of, *inter alia*, the significant additional costs involved--including the fees and expenses of the trustee and their professionals, and the costs of delay and education of them regarding YCC's business and all of the constituencies in this case—as well as the disruption to YCC's business operations in having a trustee without experience or expertise in operating in (what the Committee acknowledges is) a complex and highly regulated business. *E.g.*, MPA at 1 ("The Debtor provides taxicab transportation services in San Francisco to medallion owners under a county-authorized color scheme that is part and parcel of a highly regulated environment.")

The administrative expenses in this case are spiraling out of control, primarily due to the fees incurred by the Committee's professionals, which are already $1.2 million through their first eight months (well over double the Debtor's professional's fees).[19]

The purported benefits claimed by the Committee from appointing a trustee also lack merit. Indeed, many of the Committee's complaints are mooted by the Court's September 9, 2016 Order (Docket No. 302) authorizing the Committee to pursue legal claims on behalf of the estate.[20] And, the Committee's contention that the requested relief would "assist the Committee with its continuing investigation by reviewing documents and communications currently subject to the attorney-client privilege" (MPA at 15-16) has already been rejected by the Court:

> This Court finds no authority, nor has it been presented with any, to

---

[19] As set forth on YCC's latest Monthly Operating Report (Docket No. 313), the accrued fees of the Committee's professionals were $907,918 as of August 31, 2016. Although the Committee has ignored the Debtor's request for its professional fees in September (Kaplan Decl. ¶7 and Exhibit 4), based on their fees in recent months and their extensive activity in the case, this amount is expected to be about $300,000.

[20] Moreover, there is a significant risk of duplication of effort (and expense) if a Chapter 11 trustee were appointed, in view of the Committee's position that this would not impact the Committee's authority to pursue legal claims on behalf of the estate pursuant to the Court's September 9, 2016 Order. ("[W]e do not agree that the standing order will be moot if a Chapter 11 trustee is appointed.") Kaplan Decl. ¶8 and Exhibit 5.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

- 22 -

Case: 16-30063   Doc# 347   Filed: 10/10/16   Entered: 10/10/16 21:26:19   Page 26 of
28

> support the Committee's position. While courts have recognized
> that a debtor's right to assert or waive the attorney-client privilege
> against discovery is passed to the estate or an appointed trustee
> upon filing for bankruptcy, or the subsequent appointment of a
> trustee, such a power does not extend to a creditors' committee that
> asserts causes of action on behalf of the estate. . . . [T]he Committee
> does not control or share the attorney-client privilege asserted by
> the Debtor and cannot waive a privilege it does not enjoy.

September 9, 2016 Order (Docket No. 302) at 4 (quoting *In re Big M, Inc.*, 2013 WL 1681489 (Bankr. D. N.J. 4/17/13) (internal citations omitted)).[21]

Indeed, the Committee's motion continues its "scorched earth" agenda in this case, including seeking to block the Debtor at every turn, rather than acting in the best interests of the estate. This is reflected by, *inter alia*, the Committee's <u>unsuccessful</u> opposition to routine relief since the inception of this case, including (i) YCC's employment of Douglas Taylor, CPA, as accountant; (ii) YCC's employment of Philip Welch's firm as special counsel; (iii) YCC's assumption of the real property lease for 1760 Cesar Chavez Street, San Francisco; and (iv) YCC's acknowledgment of its continuing liability on a 2007 debt owed by TPC to First Republic Bank. *See In re Bergeron*, 2013 Bankr. LEXIS 4556, at *28-29 (Bankr. E.D.N.C. Oct. 31, 2013) ("The mismanagement and misconduct at issue, which culminated in the debtor being held in civil contempt for willful disobeying the temporary restraining order and preliminary injunction in the state court action, were responses to the 'scorched earth' strategy utility by [movant] and are not sufficient to constitute cause [for the appointment of a Chapter 11 trustee].")

In discussing the factors that courts consider in determining whether to appoint a trustee under Section 1104(a)(2), the Committee also inexplicably ignores "the debtor's historical performance and prospects for rehabilitation" (7 *Collier on Bankruptcy* ¶1104.2[3][d][ii] at p. 1104-17). In fact, YCC's latest Monthly Operating Report (Docket No. 313) reflects an <u>increase</u> in cumulative cash during this case of $404,429 , and cumulative <u>operating profit</u> of $188,423 (without taking account of the estate's accrued professional fees).

---

[21]For similar reasons, the following argument by the Committee also lacks merit: "the Court is well aware of the Debtor's resistance to the Committee's request to succeed to the attorney-client privilege in connection with control of the claims (which are the only asset likely to produce a meaningful dividend in this case). If the Debtor had the real interests of this insolvent estate at heart – and cared about the dividend – it would not have opposed the relief sought by the Committee." MPA at 9.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

1    In view of the above, the Committee has not (and cannot) establish that it would be in the

2    best interests of <u>all</u> estate constituents to appoint a Chapter 11 trustee.

3    **VII.    <u>CONCLUSION</u>**

4         For all of the foregoing reasons, the Court should deny the Motion and grant such other

5    and further relief as is just and appropriate.

6    Dated: October 10, 2016                           FARELLA BRAUN + MARTEL LLP

7
                                                       By:___/Gary M. Kaplan_____
8                                                          Gary M. Kaplan
                                                           Attorneys for Debtor in Possession
9                                                          YELLOW CAB COOPERATIVE, INC.

10   32416\5628452.1

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

YCC OPP. TO CRED. COMM. MOT. FOR
APPOINTMENT OF CHAPTER 11 TRUSTEE

Case: 16-30063    Doc# 347    Filed: 10/10/16    Entered: 10/10/16 21:26:19    Page 28 of 28