John D. Fiero (CA Bar No. 136557)
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: jfiero@pszjlaw.com

Counsel to the Official
Committee of Unsecured Creditors

Randy Michelson (CA Bar No. 114095)
Michelson Law Group
220 Montgomery Street, Ste. 2100
San Francisco, CA 94104
Telephone: (415) 512-8600
Facsimile: (415) 512-8601
Email: randy.michelson@michelsonlawgroup.com

Counsel to the Chapter 11 Trustee
Randy Sugarman

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>YELLOW CAB COOPERATIVE, INC.,<br><br>Debtor. | Case No.: 16-30063<br><br>Chapter 11<br><br>**COMBINED DISCLOSURE STATEMENT AND JOINT PLAN OF REORGANIZATION (APRIL 19, 2018)**<br><br>Hearing Date: May 23, 2018<br>Time: 10:00 a.m.<br>Place: 450 Golden Gate Ave.<br>Courtroom: 17<br>San Francisco, CA |

## PRELIMINARY STATEMENT

Randy Sugarman, the duly-elected and acting Chapter 11 trustee (the "Trustee") for Yellow Cab Cooperative, Inc.("YCC" or the "Debtor") and the Official Committee of Unsecured Creditors herein (the "Committee") jointly offer this Disclosure Statement ("Disclosure Statement") and Joint Plan of Reorganization (April19, 2018) (the "Plan") pursuant to the provisions of Chapter 11 of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Bankruptcy Code. In this document, the Trustee and the Committee will be collectively referred to as the "Plan Proponents."

This document provides information concerning the Debtor, the Trustee, the Committee, and the Plan, and includes a summary of the Debtor's assets and liabilities, a summary of what the holders of Allowed Claims and Allowed Interests will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures necessary for Confirmation (approval) of the Plan.[1]

The Plan Proponents have asked the Bankruptcy Court to confirm the Plan and to do so, if applicable, in accordance with the provisions of Section 1129(b) of the Bankruptcy Code.

## ARTICLE I

**A.** Plan and Case Background

On January 22, 2016 (the "Petition Date"), Yellow Cab Cooperative, Inc. (the "Debtor") commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor's case is being administered in the United States Bankruptcy Court of the Northern District of California, San Francisco Division, before the Honorable Dennis Montali.

This document contains information with respect to the Plan Proponents' proposed Plan. Pursuant to section 1125 of the Bankruptcy Code, this document is being distributed to you for the purpose of enabling you to make an informed judgment about the Plan. The Plan Proponents have examined various alternatives and, based on information contained herein, and for the reasons set forth below, have concluded that the Plan provides the best recovery to creditors.

This document describes the Plan and contains information concerning, among other matters: (1) the history, business, results of operations, management, properties and liabilities of the Debtor; (2) the proposed conclusion of the liquidation of the Debtor pursuant to the terms of the Plan, and (3) the proposed distribution to creditors and holders of Allowed Claims against the Debtor. The Plan Proponents request that you carefully review the contents carefully before making a decision to

---

[1] Capitalized terms in this Disclosure Statement which are not otherwise defined herein shall bear the definition and meaning ascribed to them in Article I of the Plan.

DOCS_SF-96414 3-96857/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

accept or reject the Plan. Particular attention should be paid to the provisions affecting or impairing your rights as a Creditor.

Your vote on the Plan is important. For the Plan to be accepted by a class of Claims, the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Allowed Claims in such class who vote on the Plan must vote to accept the Plan.

Non-acceptance of the Plan may lead to a liquidation under chapter 7 of the Bankruptcy Code, or to the confirmation of another plan. These alternatives may not provide for a distribution of as much value to holders of Allowed Claims as the Plan will, or provide that distribution as quickly. Accordingly, the Plan Proponents urge you to accept the Plan by completing and returning the enclosed ballot by no later than May 9, 2018 at 5:00 p.m. (Pacific Time).

**B.**     Information Regarding the Plan

1.     Sources of Information.

Factual information, including all financial information contained herein, has been provided by the Debtor, the Trustee, the Committee, or their professionals, or has been obtained from the Debtor's records, except where otherwise specifically noted. None of the Plan Proponents' attorneys, accountants or other professionals make any representation regarding that information. The Plan Proponents do not represent or warrant that the information contained herein is free from any inaccuracy. The Plan Proponents have, however, attempted to present the information accurately and fairly, and the Plan Proponents believe that the information is substantially accurate. The assumptions underlying the projections contained herein concerning the sources and amounts of payments to Creditors and Interest Holders represent the Plan Proponents' best estimates as to what they expect will happen. Because they are only assumptions about or predictions of future events, many of which are beyond the Plan Proponents' control, there can be no assurances that the assumptions will in fact materialize or that the projected realizations will in fact be met. Except as otherwise provided herein, this document will not reflect any events that occurred after the hearing before the Bankruptcy Court to determine the adequacy of the Disclosure Statement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

2.     Bankruptcy Court Approval.

Following a hearing held on April 5, 2018, the Bankruptcy Court approved this document as containing information of a kind and in sufficient detail adequate to enable a hypothetical, reasonable investor to make an informed judgment about the Plan.  Under section 1125 of the Bankruptcy Code, this approval enabled the Plan Proponents to send you this document and solicit your acceptance of the Plan.  The Bankruptcy Court has not, however, approved the Plan itself, nor conducted a detailed investigation into the contents of this document.

**C.**     Voting Instructions

1.     How to Vote.

A ballot is enclosed herewith for creditors entitled to vote to accept or reject the Plan.  To vote on the Plan, indicate on the enclosed ballot that you accept or you reject the Plan and sign your name and mail the ballot in the envelope provided for this purpose.

To be counted, ballots must be completed, signed and returned so that they are received no later than May 23, 2018 at 5:00 p.m. (Pacific Time) at the following address:

Yellow Cab Cooperative Ballot Processing
c/o Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111

Do not send your ballot via facsimile or e-mail.  If your ballot is not properly completed, signed and returned as described, it will not be counted.  If your ballot is damaged or lost, you may request a replacement by sending a written request to the above address.

2.     Who May Vote.

The Plan divides the Claims of creditors into four classes.  There is also one class of Interests.  The classes are as follows: Class 1 (Priority Employee Wage and Benefit Claims), Class 2 (General Unsecured Claims), Class 3 (Administrative Convenience Claims), Class 4 (Penalty Claims), Class 5 (Cooperative Membership Interests in the Debtor).

Classes of creditors that are impaired by the Plan are entitled to vote, unless no compensation or payment is provided for such class, in which event such class is conclusively deemed to have

4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

rejected the Plan. Each holder of an Allowed Claim in an impaired class that will receive distributions under the Plan on account of such claims may vote to accept or reject the Plan. A class is impaired if the legal, equitable or contractual rights attaching to the claims or interests of the class are modified, other than by curing defaults and reinstating maturities.

Classes 1 and 3 are unimpaired and deemed to have accepted the Plan. Classes 2, 4 and 5 are impaired under the Plan; however only Class 2 is entitled to vote on the Plan because Classes 4 and 5 are deemed to have rejected the Plan.

In determining acceptances of the Plan, the vote of a Creditor will only be counted if submitted by a Creditor whose Claim is an Allowed Claim. Generally speaking, a Creditor holds an Allowed Claim if such Claim was duly scheduled by the Debtor as other than disputed, contingent or unliquidated, or the Creditor has timely filed with the Bankruptcy Court a proof of Claim which has not been objected to or disallowed prior to computation of the votes on the Plan. The Ballot form that you received does not constitute a proof of Claim.

**D.** Confirmation

"Confirmation" is the technical phrase for the Bankruptcy Court's approval of a plan of reorganization. At the Confirmation Hearing, in order to confirm the Plan, the Plan Proponents must demonstrate that they have met the requirements of section 1129 of the Bankruptcy Code. If the Bankruptcy Court determines that all of the requirements of section 1129 have been satisfied, the Bankruptcy Court will enter an order confirming the Plan. The Plan Proponents believe that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code for confirmation of the Plan.

Voting is tabulated by class. As discussed above, a class of Creditors or interest holders has accepted a plan of reorganization if the plan has been accepted by two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Creditors or interest holders holding allowed claims or interests in that class who actually vote to accept or reject such plan.

Even if a class of Creditors or interests votes against a plan of reorganization, the Plan may nevertheless be confirmed by the Bankruptcy Court, notwithstanding the rejection of the Plan by such class, so long as certain statutory requirements are met by the Plan. This procedure is called a

DOCS_SF-9614.3-96857/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

"cram down." The Plan Proponents will request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code if any class rejects the Plan.

The Bankruptcy Court has set May 23, 2018 at 10:00 a.m. (Pacific Time) as the hearing date to determine whether the Plan has been accepted by the requisite number of Creditors and whether the other requirements for confirmation of the Plan have been satisfied. The hearing on confirmation will be held at the United States Bankruptcy Court, 450 Golden Gate Avenue, 16th Floor San Francisco, California 94102. This hearing may be continued from time to time and day to day without further notice. If the Bankruptcy Court confirms the Plan, it will enter the Confirmation Order. Any objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on the parties set forth below on or before the date set forth in the Notice of Confirmation Hearing sent to you with this Disclosure Statement and the Plan. Objections must be served upon:

John D. Fiero (counsel to the Committee)
Pachulski Stang Ziehl & Jones LLP
150 California Street, Suite 1500
San Francisco, CA 94111

Randy Michelson (counsel to the Trustee)
Michelson Law Group
220 Montgomery St, Suite 2100
San Francisco, CA 94104

Randy Sugarman (Trustee)
Sugarman & Company
505 Montgomery Street, Suite 1063
San Francisco CA 94111

Office of the United States Trustee
450 Golden Gate Avenue, 5th Floor, Suite #05-0153
San Francisco, CA 94102

**E.** Disclaimers

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION WHICH MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN PROPONENTS' PROPOSED PLAN. PLEASE READ THIS DOCUMENT WITH CARE. THE PURPOSE OF THIS DISCLOSURE STATEMENT IS TO PROVIDE "ADEQUATE INFORMATION" OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTOR AND THE CONDITION OF THE DEBTOR'S BOOKS AND RECORDS, THAT WOULD ENABLE A HYPOTHETICAL REASONABLE

6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

INVESTOR TYPICAL OF HOLDERS OF CLAIMS OR INTERESTS OF THE RELEVANT CLASS TO MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN.  SEE 11 U.S.C.  § 1125(a).

FOR THE CONVENIENCE OF CREDITORS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT THE PLAN ITSELF QUALIFIES ANY SUMMARY.  IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN WILL CONTROL.
THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE.  EACH CREDITOR OR INTEREST HOLDER SHOULD CONSULT HIS OR HER OWN LEGAL COUNSEL AND ACCOUNTANT AS TO LEGAL, TAX AND OTHER MATTERS CONCERNING HIS OR HER CLAIM OR INTEREST.

## <u>ARTICLE II</u>

A.    History of the Debtor, its Operations, and the Bankruptcy Case

The Debtor provided taxicab transportation services in San Francisco to medallion owners under a county-authorized color scheme that was part and parcel of a highly regulated environment. During the bankruptcy case, the Debtor filed pleadings with the Court indicating it was a non-profit service company that provided a base for approximately 522 San Francisco taxi medallions, operating on a cooperative basis.  At the outset of this case, the Debtor represented that it supported approximately one-third of the total taxicab medallions operating in San Francisco.

The Debtor filed its voluntary petition on January 22, 2016.  The initial members of the Committee were appointed on February 3, 2016.  Today, the Committee has five members – four of whom are accident victims and the fifth of whom is a class of plaintiff drivers who were underpaid by the Debtor.

The Trustee was appointed on November 21, 2016 pursuant to a successful motion filed by the Committee.  That motion alleged substantial pre-petition and post-petition malfeasance by the Debtor, its management, and medallion holders.

On December 7, 2016, the Trustee, the Committee and representatives of the Debtor's medallion holders met to participate in a mediation relating to claims the Committee developed relating to overpayments to equity and other transactions pre-petition that the Committee deemed inequitable.  The mediation resulted in a settlement between the Trustee and the medallion holders

7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

that provided approximately $8.2 million of cash consideration to the estate in exchange for substantial releases of liability. Notably, those releases do not extend to malfeasance of the Debtor's directors and officers, as such claims were expressly carved out the ultimate settlement agreement.

On or about March 17, 2017, the Trustee filed a motion to sell substantially all of the Debtor's operating assets for $400,000. Following an auction in the courtroom, the purchase price was increased to $810,000. The sale was approved at a hearing that occurred on April 7, 2017. The sale closed on or about April 28, 2017.

Since the conclusion of the sale, the Trustee has devoted much of his efforts to claims reconciliation. Taken at face value, the original filed claims in the case exceeded $43 million, with personal injury claims representing in excess of $37 million. With the assistance of counsel, the Trustee has negotiated settlements and/or accepted liquidated personal injury claims (jury awards and/or signed settlements) totaling approximately $17.3 million. Additionally, certain workers' compensation pre-petition claims should approximate between $2 million and $3 million. Including other claims not categorized herein, the Plan Proponents believe that the total general unsecured claims pool will total approximately $22 million.

Further, the Trustee has filed a lawsuit asserting claims against the Debtor's former officers and directors. Sugarman v. Mellegard, Case No. CGC-18-563681, pending in Superior Court for the State of California, County of San Francisco. The principals of the Debtor operated the city's largest taxi cab business under a scheme of "self-insurance" for many years. But the captive Cayman-island based insurer the Debtor created became insolvent with tens of millions of dollars of unpaid claims. The bottom line is that the Debtor for years carried "self-insurance" of $250,000 per occurrence with nothing more to backstop losses than its net worth as a going concern. Surely, the Debtor's officers and directors knew or should have known this was insufficient as early as April 30, 2011. The Debtor's callous attitude toward Creditors was also on display when the Debtor made a practice of distributing all of its net income and, in some years, monies in excess of net income to medallion holders without regard to what the Debtor's patronage calculation formula would have supported. It is the Plan Proponents' position that careful and competent management would have funded an

8

insurance reserve to account for the prospect of a catastrophic accident. The Debtor did not, and the effectively uninsured claims are evidence of that fact.

The Debtor is a California corporation organized as a cooperative. Accordingly, the interests in the Debtor were held by members, who operated the cooperative through a board of directors sourced entirely from its membership. There were no outside directors. Accordingly, each member of the Debtor's board of directors owned a medallion and, as a member of the cooperative, received alleged "patronage distributions" while the Debtor was insolvent.

This litany of action and inaction by the Debtor's officer and directors evidences the breach of fiduciary duty claims being prosecuted by the estate. There are many other facts supporting theories of recovery against the Debtor's officers and directors. To encompass them all, the Plan provision for Estate Reserved Litigation is as broad as it can possibly be, so that no claims that could create additional Creditor recoveries are excluded.

The Plan Proponents believe their case against the directors is a strong one, and that there is at least $1 million of insurance coverage available. However, the policy is a wasting policy, and there are many defendants to litigate against. The costs of litigation could be substantial, and the defendants would likely be entitled to be defended by the insurer for free (thereby using up any available insurance coverage), while the Liquidating Trustee will be paying counsel hourly rates to prosecute claims against a diminishing amount of coverage. The ability of the defendants to answer for any judgment is also currently unknown. As a result, the projections included in the Liquidation Analysis attached hereto as **Exhibit 1** showing the likely recovery in this case are extremely conservative. Thus, the Plan Proponents value the potential recoveries in <u>Sugarman v. Mellegard</u> at just $500,000.

## **ARTICLE III**

## **DEFINITIONS**

As used in the Plan, the following terms shall have the respective meanings specified below:

"<u>Administrative Claim</u>" means a Claim for any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the Bankruptcy Estate incurred on or after the Petition Date and through and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

including the Confirmation Date, any cure amounts that must be paid in connection with the assumption of any executory contract or unexpired lease of the Debtor under Section 365 of the Bankruptcy Code, fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise.

"Allowed" or "Allowed Amount" means the amount in which any Claim or Interest is allowed. Unless otherwise expressly required by the Bankruptcy Code or the Plan, the Allowed Amount of any Claim does not include interest on such Claim from or after the Petition Date.

"Allowed Administrative Claim" means all or any portion of an Administrative Claim that has either been Allowed by a Final Order or has not been objected to within the time period established by the Plan or by an order of the Bankruptcy Court.

"Allowed Claim" means a Claim (a) in respect to which a proof of Claim has been filed with the Bankruptcy Court before the applicable Claims Bar Date and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; (b) as to which no proof of Claim has been filed and which has been listed on Schedule D, E or F of the Debtor's Schedules and is not listed as disputed, contingent, unliquidated or unknown as to amount, and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; or (c) which is Allowed by a Final Order. No Claim shall be considered an Allowed Claim if (1) an objection to the allowance thereof is interposed by a party in interest within the time fixed by the Plan or the Bankruptcy Court, and such objection has not been overruled by a Final Order, or (2) the Claim has already been satisfied.

"Allowed Interest" means the Allowed Interest of an Equity Security Holder.

"Allowed Unsecured Claim" means any Allowed Claim that is not an Allowed Secured Claim, including the unsecured Claims of undersecured Creditors and Rejection Claims, but excluding Administrative Claims, Priority Claims and Tax Claims.

"Available Cash" means any and all cash and cash equivalents owned or held by the Liquidating Trustee available for payment of Claims and Interests after payment of Allowed Administrative Claims, Allowed Tax Claims, Allowed Priority Claims, Allowed Secured Claims,

10

and after reserving for expenses incurred and anticipated to be incurred as provided for under the Plan.

"Avoidance Actions" means causes of action of the Debtor or the Estate under Chapter 5 of the Bankruptcy Code.

"Bankruptcy Case" or "Case" means the bankruptcy case commenced by the Debtor's filing with the Bankruptcy Court of a voluntary petition under Chapter 11 of the Bankruptcy Code, Case No. 16-30063.

"Bankruptcy Code" means Title 11, United States Code, § 101, et seq. as in effect and applicable to the Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California, San Francisco Division or such other court exercising jurisdiction over the Case.

"Bankruptcy Estate" means the estate created by the commencement of the Bankruptcy Case and comprised of the property described in Section 541 of the Bankruptcy Code.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, as applicable to the Bankruptcy Case.

"Claim" means any (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claims Bar Date" means (a) with respect to claims other than those held by governmental units, May 16, 2016, (b) with respect to claims held by governmental units, July 21, 2017, and (c) with respect to Rejection Claims, the Rejection Claims Bar Date.

"Claims Objection Date" means the date that is 240 days after the Effective Date; provided, however, that the Claims Objection Date may be extended by the Bankruptcy Court for cause upon the *ex parte* motion of the Liquidating Trustee.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  "Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter
2  11 Case pursuant to section 1102 of the Bankruptcy Code.

3  "Confirmation" means the entry by the Bankruptcy Court of the Order of Confirmation.

4  "Confirmation Date" means the date on which the Bankruptcy Court enters the Order of
5  Confirmation.

6  "Confirmation Hearing" means the hearing held by the Bankruptcy Court on confirmation of
7  the Plan as required by Section 1128(a) of the Bankruptcy Code.

8  "Creditor" means any entity holding a Claim against the Debtor.

9  "Debtor" means the Yellow Cab Cooperative, Inc., a California corporation.

10  "Disputed Claim" means a Claim against the Debtor (a) as to which a proof of Claim has not
11  been filed and that has been listed in the Debtor's Schedules as disputed, contingent or unliquidated,
12  or; (b) as to which an objection or adversary proceeding has been filed within the time fixed by the
13  Bankruptcy Court and which objection or adversary proceeding has not been withdrawn or disposed
14  of by a Final Order.

15  "Distribution" means, as the context requires:  (a) the cash to be provided under the Plan to
16  the holders of Allowed Claims and Allowed Interests; or (b) the payment, transfer, delivery or
17  deposit of cash to Creditors and Equity Security Holders pursuant to the Plan.

18  "Distribution Date" means any date on which a Distribution is made pursuant to the Plan.

19  "Effective Date" means the twentieth (20th) day following the Confirmation Date so long as
20  the Order of Confirmation is not subject to a stay.

21  "Equity Security Holder" means the holder of an Interest in the Debtor.

22  "Estate" means the entity created on the Petition Date by operation of the Bankruptcy Code,
23  specifically including all assets subject to the control of the Trustee or the Committee pursuant to
24  Section 541 of the Bankruptcy Code or any order of the Bankruptcy Court.

25  "Estate Reserved Litigation" means all litigation claims held by the Debtor, including any
26  claims arising out of Bankruptcy Code Sections 502, 510, 541, 542, 543, 544, 545, 546, 547, 548,
27  and 549, together with any claims sounding in contract, tort, equity or statute against the Debtor's
28  affiliates, officers or directors.

12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  "Final Administrative Claims Bar Date" means that date which is thirty (30) days following

2  the date of the notice of the Confirmation Date.

3  "Final Order" means an order entered on the docket by the Bankruptcy Court as to which no

4  timely filed notice of appeal is pending within fourteen (14) days entry of such order; or, if such

5  appeal is pending, for which no stay pending has been issued.

6  "Interest" means units or rights to units or any membership interest or other ownership

7  interest held by any Person in the Debtor.

8  "Interim Administrative Claims Bar Date" means October 2, 2017, as set forth in the Court's

9  Order (1) Establishing Interim Administrative Claims Bar Date for Claims Arising Outside the

10  Ordinary Course of Business (Including Personal Injury and Tort Claims) Prior to April 28, 2017,

11  and (2) Designating Form and Manner of Notice Thereof, Docket No. 643.

12  "Legal Rate" means forty seven hundredths percent (.47%) per annum, the interest rate

13  allowed on judgments entered in federal courts pursuant to 28 U.S.C. § 1961(a) which is the weekly

14  average 1-year constant maturity Treasury yield, as published by the Board of Governors of the

15  Federal Reserve System, for the calendar week preceding the Petition Date.

16  "Liquidating Trustee" means Randy Sugarman, who shall also be so designated by the Court

17  in the Confirmation Order.

18  "Local Rules" means the Local Rules of the United States Bankruptcy Court for the Northern

19  District of California, as amended, as applicable to this Bankruptcy Case.

20  "Order of Confirmation" means the order entered by the Bankruptcy Court approving and

21  confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

22  "Penalty Claim" means any Allowed Claim of the type specified in Section 726(a)(4) of the

23  Bankruptcy Code.

24  "Person" shall have the meaning ascribed to it in the Bankruptcy Code.

25  "Petition Date" means January 22, 2016, the date on which the Debtor filed its Voluntary

26  Petition under Chapter 11 initiating the Bankruptcy Case and on which date relief was ordered in the

27  Bankruptcy Case.

28

13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

"Plan" means this Joint Plan of Reorganization, including any modification(s) hereof and/or amendment(s) hereto that comply with Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

"Priority Claim" means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, but not including an Administrative Claim or a Tax Claim.

"Professionals" means those professional persons or firms retained by the Committee or the Estate pursuant to Section 330 of the Bankruptcy Code; and such other professionals whose employment prior to Confirmation is approved by order of the Bankruptcy Court, if any.

"Pro Rata" means, with respect to any Distributions to be made to the holder of an Allowed Claim or Interest, the proportion that such Allowed Claim or Allowed Interest bears to the aggregate of all outstanding Allowed Claims or Allowed Interest in the same Class.

"Rejection Claim" means an Allowed Unsecured Claim arising from the rejection of an unexpired lease or executory contract pursuant to the Plan or pursuant to an order of the Bankruptcy Court.

"Rejection Claims Bar Date" means the earlier of (a) thirty (30) days following the date of the notice of the Confirmation Date, or (b) thirty (30) days after the rejection date with respect to an executory contract or unexpired lease rejected before the Confirmation Date pursuant to a Final Order.

"Retained Claims" means any Claim, or cause of action created by contract, tort, equity, or statute, owned or held by the Debtor against any Person as of the Effective Date, including Avoidance Actions and those Retained Claims referred to in Article X.

"Schedules" means the Debtor' respective schedules of assets and liabilities consisting of Schedule "A" through "J" filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b), as may be amended at any time prior to Distribution.

"Secured Claim" means a Claim secured by a lien, security interest, or other charge against or interest in property in which the Debtor has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as specified in the Plan, or if no value is

14

specified, as determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of a holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

"Tax Claim" means any Allowed Claim against the Debtor entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

"Tort Claim" means any Allowed Class 2 Claim that arises in tort and/or personal injury.

"Tort Claimant" means the holder of any Tort Claim.

"Tort Claimant Dismissal" means the dismissal of the Debtor from litigation currently pending in any form or fashion in any forum or adjudicative body relating to a Tort Claim.

Any term that is not herein defined but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules.

## ARTICLE IV

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Allowed Claims against and Interests in the Debtor are designated and classified below for purposes of the Plan. Except to the extent that the Plan provides otherwise, a Claim or Interest that is properly includable in more than one class is classified in a particular class only to the extent that it qualifies within the description of that class, and is placed in a different class to the extent it qualifies within the description of such different class.

**A.    Class 1 (Priority Employee Wage and Benefit Claims).**  Class 1 consists of Priority Claims against the Debtor entitled to priority under Bankruptcy Code Sections 507(a)(4) and (a)(5).

**B.    Class 2 ( General Unsecured Claims ).**  Class 2 consists of all Allowed Unsecured Claims against the Debtor, including all Rejection Claims and all Tort Claimants, vendors and trade Creditors of the Debtor arising prior to the Petition Date, but excluding Administrative Claims, Priority Claims, Penalty Claims, and Tax Claims.

**C.    Class 3 (Administrative Convenience Claims).**  Class 3 consists of the Allowed Claims of any Creditor in the amount of $250 or less, or of any Creditor willing to reduce its claim to $250 in writing.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**D.** **Class 4 (Allowed Penalty Claims).** Class 4 consists of all Allowed Claims for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising prior to the Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss.

**E.** **Class 5 (Cooperative Membership Interests in the Debtor).** Class 5 consists of all Allowed Interests in the Debtor held by Equity Security Holders, specifically including but not limited to all cooperative membership interests.

### CLASSES OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN

Class 1 and Class 3 are not impaired because the Plan provides that claimants with Allowed Claims in these classes will receive the following treatment: Except to the extent that the holder of a particular Class 1 Claim has agreed to a different treatment of such Claim, each holder of an Allowed Class 1 Claim shall be paid in cash, in full upon the later of (a) the Effective Date, or (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Claim. With regard to Class 3 Claims, they shall be paid in cash, in full upon the later of (a) the Effective Date, or (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Claim.

### ARTICLE VI

### TREATMENT OF UNCLASSIFIED CLAIMS

Unclassified Claims shall be treated as follows:

**A.** **Allowed Administrative Claims.** Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Claim, each holder of an Allowed Administrative Claim shall be paid in cash, in full upon the later of (a) the Effective Date, (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Administrative Claim, and (c) if such Claim is incurred after the Petition Date in the ordinary course of the Debtor's business by a person other than an insider, within such time as payment is due pursuant to the terms giving rise to such Claim. For those Administrative Claims not subject to the Interim Administrative Claims Bar Date, any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code (including an estimation of expenses to be incurred after the Effective Date), other than Professionals, must be filed on or before the Final Administrative Claims Bar Date or the holder

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

of such Claim shall be forever barred from asserting such Claim or receiving any payment on account of such Claim. Allowance of professional fees and costs claimed by any Professionals accruing before the Confirmation Date shall remain subject to Bankruptcy Court approval pursuant to Section 330 of the Bankruptcy Code.

**B.      Tax Claims.**  The holders of Allowed Claims entitled to priority under 11 U.S.C. § 507(a)(8) ("Allowed Tax Claims") will receive equal deferred cash payments, payable quarterly, commencing with an initial payment six months from the Effective Date, over a period not exceeding five (5) years after the date of assessment of each such claim, or the applicable Petition Date, whichever is sooner; provided however, that Allowed Tax Claims shall be paid in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan.  The unpaid portion of any Allowed Tax Claim shall bear interest at the statutory rate.  The Liquidating Trustee reserves the right to pay any Allowed Tax Claim in full at any time after the Effective Date.

## ARTICLE VII

## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

## THAT ARE IMPAIRED UNDER THE PLAN

**A.      Class 2 (General Unsecured Claims).**  Each holder of an Allowed Class 2 Claim shall  receive Pro Rata distributions from Available Cash in the Plan Distribution Account up to the full amount their Allowed Claims with interest at the Legal Rate, on the terms and conditions set forth in Article VIII below.

*Additional Requirement for Tort Claimants*:  No distribution shall be made to any Tort Claimant unless and until the Tort Claimant delivers to the Liquidating Trustee a file-stamped and fully-dispositive Tort Claimant Dismissal dismissing the Debtor.

**B.      Class 4 ( Penalty Claims).**  Each holder of an Allowed Class 4 Claim  shall receive nothing under the Plan.

**C.      Class 5 (Cooperative Membership Interests in the Debtor).**  The existing membership interests in the Debtor shall be deemed cancelled as of the Effective Date and the holder(s) of those interests shall receive nothing.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

17

# ARTICLE VIII

# MEANS FOR IMPLEMENTATION OF THE PLAN

**A.      Post-Confirmation Operations and Management of the Estate**.  From and after the Effective Date, the Liquidating Trustee shall manage the Estate and shall have all of the authority to act on behalf of the Estate and the Debtor pursuant to the Liquidating Trust Agreement hereto and labeled **Exhibit 2**.  Such management shall include, without limitation, (a) fulfilling the duties and obligations of the Estate under the Plan, (b) prosecuting the Estate Reserved Litigation in his or her own name or in the name of the Debtor at his or her discretion, (c) abandoning any assets deemed to be burdensome or of inconsequential value to the Estate, (d) otherwise fully administering the Estate as required by the Plan, the Order of Confirmation, the Bankruptcy Code and the Bankruptcy Rules. Without limiting the foregoing, the Liquidating Trustee will have all of the rights and powers of an estate representative appointed pursuant to Section 1123(b)(3) of the Bankruptcy Code.  The Liquidating Trustee may resign at any time, or may be removed for cause upon motion by any party in interest to the Bankruptcy Court.   Any substitute Liquidating Trustee shall be appointed by the Court on nomination of the Liquidating Trust Board.  Unless ordered by the Bankruptcy Court, the Liquidating Trustee shall serve without a guaranty or fiduciary bond.   The Liquidating Trust shall indemnify the Liquidating Trustee, the Liquidating Trust Board and any retained Professionals from any and all claims, demands, lawsuits, charges, or expenses arising out of or relating to the administration of the Liquidating Trust or the Plan, provided however that no party shall be indemnified from the consequences of its own ordinary negligence, gross negligence, or intentional conduct.

**B.      Professional Compensation.**  The Liquidating Trustee shall be entitled to retain and compensate from Available Cash, such professionals and other Persons as he or she deems fit, including the continued retention of the Trustee's Professionals and/or the Committee's Professionals. The Liquidating Trustee shall be entitled to be compensated for services rendered after the Effective Date at his or her normal hourly rates.  From and after the Effective Date of the Plan the Liquidating Trustee and all retained Professionals and professionals may be paid 100% of their periodic invoices.

DOCS_SF:96441.3 96857/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**C. Post-Confirmation Role of the Committee**. Upon the Effective Date, the Committee shall remain in existence for the sole purpose of reviewing and commenting upon pre-Confirmation fees and expenses of the Professionals.  Upon the final allowance or disallowance of such fees and expenses, the Committee shall be dissolved.  The members of the Committee shall serve as the initial Liquidating Trust Board pursuant to the terms of **Exhibit 2** hereto.

**D. Distributions.**

1. **Liquidating Trustee**.  The Liquidating Trustee shall serve as agent for the Estate in making all cash distributions required to consummate the Plan from the Plan Disbursement Account.

2. **Plan Disbursement Account.**  The Liquidating Trustee shall hold any funds transmitted to it in a segregated Plan Disbursement Account for the benefit of holders of Allowed Claims.

3. **Timing of Distributions.**  The Liquidating Trustee shall make a first Distribution to holders of Allowed Claims as soon as practicable after the Effective Date.  At this time, the Plan Proponents expect that an initial distribution of approximately 6-8% of any given Allowed Claim amount will be made within 30 days of the Effective Date.  Thereafter, the Liquidating Trustee shall make subsequent Distributions in his or discretion, but not less than annually.  Distributions may be made without further Order of Court.

4. **Distribution Reserves.**  The Liquidating Trustee must retain and reserve such amounts as are reasonably necessary to satisfy amounts that would be distributable in respect of Disputed Claims if the Disputed Claims were allowed in the face amount of such Disputed Claims (the "Disputed Claim Reserve"), and any such other amounts (such as other claims or other contingent liabilities) as reasonably necessary in his business judgment to fulfill his duties under the Plan or the Liquidating Trust Agreement.

5. **Distribution Addresses**.  Unless the Creditor has provided the Liquidating Trustee with written notice of a different address, Distributions will be sent to Creditors at the address set forth in the proofs of Claim filed with the Bankruptcy Court.  If no proof of Claim is filed with respect to a particular Claim, the Distribution will be mailed to the address set forth in the

19

DOCS_SF:96441.3 96857/002

Schedules.

6. **Withholding Taxes.** Pursuant to Section 346(h) of the Bankruptcy Code, the Liquidating Trustee shall be entitled to deduct any federal, state or local withholding taxes from any cash payments made with respect to Allowed Claims, as appropriate. The Liquidating Trustee shall be permitted to withhold a Distribution to any Creditor that has not provided information requested by the Liquidating Trustee for the purpose of fulfilling his or her obligations hereunder. The Liquidating Trustee shall comply with all reporting obligations imposed on him or her by any governmental unit with respect to withholding and related taxes.

E. **De Minimis Distributions.** Notwithstanding any other provision of the Plan, Distributions of less than $25.00 need not be made on account of any Allowed Claim or Allowed Interest; provided that Distributions that would otherwise be made but for this provision shall carry over until the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim or Allowed Interest is entitled to more than $25.00, at which time the cumulative amount of such Distributions will be paid to such holder.

F. **Unclaimed Distributions.** Any cash Distributions that remain unclaimed or unnegotiated for ninety (90) days following Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) shall become the property of the Estate and be considered Available Cash.

G. **Prosecution of the Estate Reserved Litigation**. Any proceeds of the Estate Reserved Litigation, after payment of compensation and other costs, shall be paid into the Plan Disbursement Account. The Liquidating Trustee shall have exclusive standing to investigate, prosecute, and, if appropriate, compromise any Estate Reserved Litigation against any Persons or entities; provided however, that the Liquidating Trustee may, in his or her sole and absolute discretion, prosecute any such action in the name of the Debtor and/or assign any such action to the Liquidating Trust Board which may prosecute such action in the name of "Liquidating Trust Board of Yellow Cab Cooperative, Inc." Any compromise of Estate Reserved Litigation may be consummated without notice, hearing, or order of the Court, provided that the Liquidating Trustee and the Liquidating Trust Board each consent and further provided that the Court will retain

20

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

jurisdiction to approve any compromise if requested by any party in interest. The Liquidating Trustee and the Liquidating Trust Board reserve the right to object to any filed or scheduled claim. Any and all Estate Reserved Litigation pending as of the Effective Date shall be deemed assigned to the Liquidating Trustee. Any and all Objections to Claims and other contested matters by or against the Debtor pending as of the Effective Date shall likewise be deemed assigned to the Liquidating Trustee.

**H.     Vesting of Property of the Estate.**  On the Effective Date, the Estate shall continue in existence until entry of the Final Decree, and  all property of the Debtor shall vest in the Liquidating Trustee, free and clear of any and all liens (except for Allowed Secured Claims), encumbrances, or Claims of Creditors.  Revesting does not modify the nature of any contracts assumed by the Debtor.

**I.     Organizational Matters.**  The Debtor shall be deemed dissolved as of the Effective Date and all of its membership interests cancelled.  The Liquidating Trustee shall be authorized to file with the California Secretary of State  whatever documents he or she deems appropriate to effectuate this dissolution and winding up.

**J.     Further Orders.**  Upon motion by the Liquidating Trustee or the Liquidating Trust Board on not less than ten (10) days' notice to registered ECF participants entitled to notice in this Case, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

**K.     Insurance Policies.**  To the extent any insurance policies exist in which either the Debtor and/or its personnel have an insurable or other interest in or right to make a claim, such policies shall remain available, before and after the Effective Date, to satisfy any and all Claims held by, or asserted against, the Debtor, the Trustee, the Liquidating Trustee, the Committee, the Liquidating Trust Board, and/or the Debtor's current or former management or other personnel that may be covered by such policies.

**L.     Best Interests of Creditors – Bankruptcy Code Section 1129(a)(7).**  The Liquidation Analysis attached hereto as **Exhibit 1** sets forth a conservative projection of the likely

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

outcome of this case if the Plan is confirmed. The Plan Proponents believe the Plan satisfies the "best interests of creditors" test because Creditors will receive or retain under the Plan on account of their Allowed Claims more than the amount that such Creditors would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. Specifically, conversion of this case to Chapter 7 would trigger the establishment of a new claims bar date which could very likely result in dilution of the amounts to be paid to creditors hereunder as a result of new claims being filed that would otherwise have been time-barred. Moreover, conversion would create a delay in distributing funds to Creditors because no monies would be distributed until the new Chapter 7 claims bar date had passed and the Chapter 7 trustee had resolved the newly-filed claims.

  **M. Post-Confirmation Operating Expenses.** From and the Effective Date, the Liquidating Trustee may incur and pay operating expenses in the ordinary course of business.

  **N. Post-Confirmation Reports, Fees, and Final Decree.**

   1. **U.S. Trustee Fees.** Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Liquidating Trustee shall pay to the United States Trustee the quarterly fee for such quarter until this case is converted, dismissed, or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

   2. **Post-Confirmation Reports.** Not later than thirty (30) days after the end of the calendar quarter which ends after the Effective Date, the Liquidating Trustee shall file and serve upon the United States Trustee separate quarterly post-Confirmation status reports in substantially the form provided by the United States Trustee. Further reports shall be filed thirty (30) days after the end of every calendar quarter thereafter until entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

   3. **Final Decree.** Once the Plan is substantially consummated, the Liquidating Trustee shall file an application for a Final Decree as provided in the Local Rules.

**ARTICLE IX**

DOCS_SF:96441.3 96857/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.     Assumption of Executory Contracts and Unexpired Leases.**  Any executory contracts of the Debtor which have not specifically been assumed shall be deemed rejected on the Effective Date.

**B.     Effect of Assumption of Executory Contracts and Unexpired Leases.**  Any executory contracts assumed prior to Confirmation shall remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Order of Confirmation, and be binding on the parties thereto.

**C.     Adding and Removing Executory Contracts and Unexpired Leases.**  The provisions of this Article IX may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the hearing on Confirmation of the Plan, to add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan.

**D.     Defaults.**  Unless other treatment is agreed to between the parties to each assumed contract or lease, if there has been a default in an assumed executory contract or unexpired lease other than the kind specified in Section 365(b)(2) of the Bankruptcy Code, the Trustee shall, on or before the Effective Date, (a) cure, or provide adequate assurance that he or she will promptly cure, any such default, (b) compensate, or provide adequate assurance that he or she will promptly compensate, the other party to such contract or lease, for any actual pecuniary loss to such party resulting from such default, and (c) provide adequate assurance of future performance under such contract or lease.

**E.     Rejection Claims.**  Rejection Claims shall be classified as Class 2  Claims.  The holder of a Rejection Claim shall file with the Bankruptcy Court, and serve on counsel for the Liquidating Trustee, a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim.

## ARTICLE X

## PROOFS OF CLAIM AND INTEREST; OBJECTIONS

DOCS_SF:96441.3 96857/002

Case: 16-30063     Doc# 753     Filed: 04/17/18     Entered: 04/17/18 13:29:48     Page 23 of 48

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**A. Time for Filing Proofs of Claim.** Proofs of Claim, when required, must be filed with the Bankruptcy Court no later than the applicable Claims Bar Date, or such Claims shall be conclusively deemed barred and disallowed by the Confirmation Order.

**B. Amendments to Claims.** Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, upon expiration of the applicable bar date, proofs of Claim and proofs of interest may not be filed or amended except for amendments to proofs of Claim to decrease the amount or priority thereof.

**C. Claim Objections.** An objection to a Claim shall be filed no later than the Claims Objection Date. The Liquidating Trustee shall have the primary responsibility to review Claims filed against the Debtor, to file objections as appropriate, and to resolve Disputed Claims; provided however, that the Liquidating Trustee may delegate such responsibility to the Liquidating Trust Board.

**D. Distributions.** Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions of consideration hereunder, payments and Distributions in respect of any Claim that at such date or time is disputed, unliquidated or contingent, shall not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, whereupon appropriate Distributions shall be made promptly in accordance with the Plan.

## ARTICLE XI

## PRESERVATION OF RETAINED CLAIMS

Confirmation of the Plan effects no settlement, compromise, waiver or release of any Estate Retained Claim unless the Plan or Order of Confirmation specifically and unambiguously so provides. The failure of the Plan to refer to any particular Retained Claim is not and shall not be construed as a settlement, compromise, waiver, or release of any such Retained Claim. All Estate Retained Claims are hereby preserved and shall continue to remain valid after the Effective Date. The Liquidating Trustee further reserves the right to object to any filed or scheduled Claim. The entry of the Order of Confirmation shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Liquidating Trustee upon any Estate Retained Claims.

24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## ARTICLE XII

## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain exclusive jurisdiction of the Bankruptcy Case (a) to enforce the provisions, purposes, and intent of the Plan, (b) to hear and determine any adversary proceedings or contested matters filed in or related to the Cases, including the Estate Reserved Litigation, (c) to hear and determine the allowance or disallowance of Claims, (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan, (e) to adjudicate controversies arising from the terms of the Plan, (f) to hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (g) to enforce or interpret the provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Bankruptcy Case, (h) to facilitate the consummation of the Plan, including without limitation (i) the approval of any settlement (j) the appointment of a Liquidating Trustee or Successor Liquidating Trustee, (k) to consider such other matters as may be set forth in the Plan or the Order of Confirmation, (l) to hear and determine any Claim of any Persons of any nature whatsoever against the Trustee, the Committee, the Debtor, the Professionals, the Liquidating Trustee, the Liquidating Trust Board, any professionals retained by the Liquidating Trustee or the Liquidating Trustee Board, and/or the Debtor's management arising in or related to the Case, (m) to issue Orders for Examination of any person or entity on Motion of the Liquidating Trustee and/or the Committee, and (n) to enter a Final Decree closing the Bankruptcy Case(s). If closed, the Bankruptcy Case(s) may be reopened at any time to facilitate the provisions of this Article.

## ARTICLE XIII

## EFFECT OF ORDER OF CONFIRMATION

As of the Confirmation Date, the effect of the Order of Confirmation shall be as provided in Section 1141 of the Bankruptcy Code, and as follows:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**A. Binding Effect of Plan.** The provisions of the confirmed Plan shall bind the Debtor, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Equity Security Holder, whether or not such Creditor or Equity Security Holder has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such Creditor or Equity Security Holder is impaired under the Plan, and whether or not such Creditor or Equity Security Holder has accepted or rejected the Plan.

**B. Injunction.** FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, CURRENTLY HOLD OR MAY HOLD A DEBT, CLAIM OR INTEREST AGAINST THE ESTATE OR THE LIQUIDATING TRUSTEE, OR THEIR RESPECTIVE PROPERTY, INCLUDING PROPERTY TRANSFERRED PURSUANT TO THIS PLAN ARE ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH DEBT OR CLAIM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST THE ESTATE, THE LIQUIDATING TRUSTEE, OR THEIR RESPECTIVE PROPERTY; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR OTHER ORDER AGAINST THE ESTATE (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST THE ESTATE, OR THEIR RESPECTIVE PROPERTY, INCLUDING THE PROPERTY TRANSFERRED PURSUANT TO THIS PLAN; (D) ASSERTING ANY SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE THE ESTATE; AND (E) COMMENCING OR CONTINUING ANY ACTION, IN ANY MANNER, IN ANY PLACE THAT DOES NOT COMPLY WITH OR ITS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE ORDER OF CONFIRMATION.

**C. Limitation of Liability.** On and after the Effective Date, neither the Debtor, the Committee, the Trustee, the Liquidating Trustee nor the Liquidating Trust Board, nor any of their respective officers, members, managers, agents, employees, Professionals or professionals, shall have or incur any liability to any Person for any authorized act taken or authorized omission made in in connection with or related to the Bankruptcy Case or the Estate, including objections to or

26

estimations of Claims, disposition of assets, or formulating, determining not to solicit acceptances or rejections to, or confirming the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan, provided however that such limitation shall not extend to ordinary negligence, gross negligence, or intentional conduct.

## ARTICLE XIV

## MISCELLANEOUS

**A.    Plan Interpretation.**  The headings contained in the Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of the Plan.  All references in the Plan to the singular shall be construed to include references to the plural and vice versa.   All references in the Plan to any one of the masculine, feminine or neuter genders shall be deemed to include references to both other such genders.  All exhibits attached to the Plan are incorporated into the Plan.  All references in the Plan to a Section or an Article shall mean the appropriately numbered Section or Article of the Plan.  Whenever the Plan uses the term "including," such reference shall be deemed to mean "including, but not limited to."

**B.    Modification.**  The Plan Proponents may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan.  After the Confirmation Date, the Liquidating Trustee and/or the Liquidating Trust Board may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

**C.    Waiver.**  After the Confirmation Date, except as otherwise specifically set forth in the Plan, any term of the Plan may be waived only by the party or parties entitled to the benefit of the term to be waived.

**D.    Reservation of Rights.**  Neither the filing of the Plan nor any statement or provision contained herein, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In the event that the Plan is not confirmed or fails to become

27

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Bankruptcy Case, except with respect to Confirmation of the Plan.

## ARTICLE XV

### Tax Consequence of Plan

Implementation of the Plan may result in federal income tax consequences to Creditors. Tax consequences to a particular Creditor may depend on the particular circumstances or facts regarding the claim of the Creditor. No tax opinion has been sought or will be obtained with respect to any tax consequences of the Plan, and the following disclosure does not constitute and is not intended to constitute either a tax opinion or tax advice to any person.

THE PLAN PROPONENTS MAKE NO REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CREDITOR. EACH PARTY AFFECTED BY THE PLAN SHOULD CONSULT HER, HIS OR ITS OWN TAX ADVISORS REGARDING THE SPECIFIC TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO A CLAIM.

Dated:   April 17, 2018          YELLOW CAB COOPERATIVE, INC.


By:  _/s/  Randy Sugarman_____
     Randy Sugarman
     Chapter 11 Trustee for Yellow Cab Cooperative,
     Inc.

Dated:   April 17, 2018          LAW OFFICES OF DAVID COOK


By:  _/s/  David Cook_____
     David Cook
     Counsel to the Chair of the Official
     Committee of Unsecured Creditors, Ida Christina
     Fua

Dated:   April 17, 2018          PACHULSKI STANG ZIEHL & JONES LLP


By:  _/s/  John Fiero_____
     John D. Fiero
     Counsel to the Official
     Committee of Unsecured Creditors

28

DOCS_SF:96441.3 96857/002

| 1 | Dated: April 17, 2018 | MICHELSON LAW GROUP |
|---|---|---|
| 2 | | |
| 3 | | By: _/s/ Randy Michelson_ |
| | | Randy Michelson |
| | | Counsel to the Chapter 11 Trustee |
| 4 | | Randy Sugarman |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

29

**Exhibit 1 To Plan: Liquidation Analysis**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOCS_SF:96441.3 96857/002

| Yellow Cab Cooperative, Inc. | | | | |
|---|---|---|---|---|
| **Liquidation Analysis** | | | | |
| | | | | |
| | | | | |
| | | | | |
| **Description:** | | | | |
| **Assets on hand** | | | | |
| | Cash in bank | | $ 5,500,000 | est. |
| | Interest | | $ 4,000 | est. |
| | Deposit returns | | $ 82,415 | est. |
| | Other | | | |
| | Total | | $ 5,586,415 | est. |
| | | | | |
| **Assets possibly obtained** | | | | |
| | Litigation proceeds, gross | Note 1 | $ 500,000 | est. |
| | FTC license sale | | $ 15,000 | est. |
| | Other | | | |
| | Total | | $ 515,000 | est. |
| | | | | |
| **Total assets available, best case** | | | $ 6,101,415 | est. |
| | | | | |
| **Less administrative expenses** | | | | |
| | YCC - operations | | $ 300,000 | est. |
| | Administrative claims | | $ 1,047,471 | est. |
| | YCC- professionals | | | |
| | Incurred before hearing date, est. | | $ 642,158 | est. |
| | Incurred after hearing date, est. | Note 2 | $ 568,100 | est. |
| | Sub - Total | | $ 2,557,729 | est. |
| | Trustee fees, to confirmation | | $ 83,153 | est. |
| | Total | | $ 2,640,882 | est. |
| | | | | |
| **Funds available for distribution to Creditors** | | | $ 3,460,533 | est. |
| | | | | |
| | | | | |
| **Less pre-petition obligations, at allowed amounts** | | | | |
| | Claim class 1 = Schedule E | | $ 5,000 | @100% est. |
| | Claim Class 2 = Convenience class | | $ 7,500 | @100% est. |
| | Claim Class 3 = unsecured claims | | $ 27,500,000 | 12.6% est. |
| | Claim Class 4 = penalty claims | Note 3 | $ - | |
| | Claim Class 5 = equity | | $ - | |
| | | | $ 27,512,500 | |
| | | | | |
| | | | | |
| | | | | |
| Notes: | | | | |
| 1 | Conservative estimate of recovery on claim against former directors and officers. Applicable insurance is believed to be at least $1 million. | | | |
| 2 | Includes professional fees to be incurred in lawsuit mentioned in Note #1, negotiation of claim resolutions and claim objection litigation. | | | |
| 3 | Class 4 claims are estimated to be $0. No distribution on account of Class 4 claims is expected. | | | |

**Exhibit 2 To Plan: Liquidating Trust Agreement**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# YELLOW CAB COOPERATIVE, INC. LIQUIDATING TRUST AGREEMENT

This *Yellow Cab Cooperative, Inc. Liquidating Trust Agreement* (the "Agreement") dated as of _____ is established by Yellow Cab Cooperative, Inc., a chapter 11 debtor for which Randy Sugarman (the "Trustee") is the duly-appointed and acting chapter 11 trustee in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court") in Chapter 11 Case No. 16-30063 (hereafter referred to as the "Debtor") and Randy Sugarman (the "Liquidating Trustee"), and is executed in connection with and pursuant to the terms of the *Joint Plan of Reorganization* (the "Plan"), which provides for, among other things, the establishment of the trust evidenced hereby (the "Liquidating Trust").

## W I T N E S S E T H

WHEREAS, on January 22, 2016, the Debtor filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code with the Bankruptcy Court;

WHEREAS, on or about _____, 2018, the Bankruptcy Court entered its Order Confirming Joint Plan of Reorganization (the "Confirmation Order");

WHEREAS, the Liquidating Trust is created pursuant to, and to effectuate, the Plan;

WHEREAS, the Liquidating Trust is created on behalf, and for the sole benefit, of the holders of Allowed Administrative Claims, Priority Claims, and holders of Allowed Class 1 through 4 Claims (the "Trust Beneficiaries"), as set forth in the Plan;

WHEREAS, the Liquidating Trust is established for the sole purpose of collecting, distributing and liquidating the Liquidating Trust Assets for the benefit of the Trust Beneficiaries in accordance with the terms of this Agreement and the Plan;

WHEREAS, the Liquidating Trust shall have no objective or authority to continue or to engage in the conduct of a trade or business;

WHEREAS, the Plan provides that the Trust Beneficiaries are entitled to their applicable share of: Estate assets and their proceeds, including but not limited to Avoidance Actions, Estate Reserved Litigation, rights of setoff and any other property of the Estate not otherwise disposed of on the Effective Date, including but not limited to claims against the Debtor's former members, managers, officers and attorneys, all as described in the Disclosure Statement;

WHEREAS, pursuant to the Plan, the Debtor, the Liquidating Trustee, and the Trust Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Liquidating Trust Assets to the Liquidating Trust as a transfer of the Liquidating Trust Assets by the Debtor to the Trust Beneficiaries in satisfaction of their Allowed Claims under the Plan, followed by a transfer of the Liquidating Trust Assets by the Trust Beneficiaries to the Liquidating Trust in exchange for the beneficial interest herein, and to treat the Trust Beneficiaries as the grantors and owners of the Liquidating Trust in accordance with Treasury Regulation Section 301.7701-4;

WHEREAS, the Liquidating Trust is intended to be treated as a grantor trust for federal income tax purposes;

WHEREAS, the Bankruptcy Court shall have jurisdiction over the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, including, without limitation, any Estate Reserved Litigation, as provided herein and in the Plan; and

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Debtor (by and through the chapter 11 trustee) and the Liquidating Trustee agree as follows:

<u>ARTICLE XV</u>
**DEFINITIONS AND INTERPRETATIONS**

A.      <u>Definitions</u>.

1.      "Agreement" shall have the meaning set forth in the introductory paragraph to this Agreement.

2.      "Bankruptcy Court" shall have the meaning set forth in the introductory paragraph to this Agreement.

3.      "Debtor" shall have the meaning set forth in the introductory paragraph to this Agreement.

4.      "Effective Date" shall have the meaning set forth in the Plan.

5.      "Liquidating Trust Assets" shall mean all Estate assets, including but not limited to the proceeds of all Estate assets, including but not limited to Avoidance Actions, other Estate Reserved Litigation, rights of setoff and any other property of the Estate not otherwise disposed of on the Effective Date, including but not limited to claims against the Debtor's former managers, members, officers and attorneys, as described in the Disclosure Statement.

6.      "Liquidating Trust" shall have the meaning set forth in the introductory paragraph to this Agreement.

7.      "Liquidating Trustee" shall mean (x) initially, Randy Sugarman, and (y) any successors or replacements duly appointed under the terms of this Agreement.

8.      "Trust Beneficiaries" shall have the meaning set forth in the Recitals to this Agreement, or any successors to such Trust Beneficiaries pursuant to Section 7.5 of this Agreement.

9.      "Plan" shall have the meaning set forth in the introductory paragraph to this Agreement.

B.      <u>Use of Plan Definitions</u>.  All capitalized terms which are used in this Agreement and not otherwise defined herein shall have the same meaning set forth in the Plan.  In the case

DOCS_SF:96441.3 96857/002

Case: 16-30063   Doc# 753   Filed: 04/17/18   Entered: 04/17/18 13:29:48   Page 34 of 48

of any inconsistency between the terms of this Agreement and the terms of the Plan, the terms of the Plan shall govern and control.

**C.** <u>Certain References</u>. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such section or article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular section or article of this Agreement.

**ARTICLE XVI**
**ESTABLISHMENT, PURPOSE AND FUNDING OF LIQUIDATING TRUST**

**A.** <u>Creation and Name</u>. There is hereby created the Liquidating Trust, referred to in the Plan. The Liquidating Trustee may conduct the affairs of the Liquidating Trust under the name of the "Yellow Cab Cooperative Liquidating Trust."

**B.** <u>Purpose of Liquidating Trust</u>. The Debtor and the Liquidating Trustee, pursuant to the Plan and in accordance with Title 11 of the United States Code (the "Bankruptcy Code"), hereby create the Liquidating Trust for the purpose of collecting, distributing and liquidating the Liquidating Trust Assets for the benefit of the Trust Beneficiaries in accordance with the terms of this Agreement and the Plan. The activities of the Liquidating Trust shall be limited to those activities set forth in Article IV hereof and as otherwise contemplated by the Plan. The Liquidating Trustee understands and agrees that the Liquidating Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

The Liquidating Trustee's responsibilities, duties and obligations are to the holders of Allowed Administrative Claims, Priority Tax Claims, and holders of Allowed Class 1 through 4 Claims which have not been finally resolved or are not yet paid prior to the Effective Date. The Liquidating Trustee shall have an independent right and standing to request relief from the Bankruptcy Court which the Liquidating Trustee believes to be in accordance with the best interests of the Trust Beneficiaries. For purposes of performing his duties and fulfilling his obligations under the Plan, this Agreement, and the Confirmation Order, the Liquidating Trustee shall be deemed to be a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code and a representative of the Estate under Bankruptcy Code section 1123(b)(3) and 1129(a)(5). The duties, obligations, and responsibilities of the Liquidating Trustee shall be to: (a) liquidate, resolve, pay, and satisfy all Administrative Claims, Priority Claims, and Class 1 through 4 Claims in accordance with the Plan, this Agreement, and the Confirmation Order; (b) oversee the preservation, holding, management and maximization of all Estate proceeds in order to pay and satisfy those Allowed Claims; (c) prosecute, settle and manage the disposition of objections to Claims; (d) take or not take those actions which the Liquidating Trustee in his business discretion believes to be in accordance with the best interests of the Trust Beneficiaries and which actions or inactions are consistent with the Plan; and (e) perform all other duties, obligations and responsibilities of the Liquidating Trustee set forth in the Plan, the Liquidating Trust Agreement, or Confirmation Order.

3

C.    Transfer of Liquidating Trust Assets.

1.    Pursuant to the Plan, which is incorporated by reference herein, the Debtor hereby grants, releases, assigns, conveys, transfers and delivers, on behalf of the Trust Beneficiaries, the Liquidating Trust Assets to the Liquidating Trustee as of the Effective Date, in trust for the benefit of the Trust Beneficiaries for the uses and purposes as specified in this Agreement and the Plan.  The Debtor shall from time to time as and when reasonably requested by the Liquidating Trustee execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtor shall take or cause to be taken such further action as the Liquidating Trustee may reasonably deem necessary or appropriate, to vest or perfect in or confirm to the Liquidating Trustee title to and possession of the Liquidating Trust Assets.

2.    For all federal, state and local income tax purposes, the Debtor, the Trust Beneficiaries, and the Liquidating Trustee shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as a transfer of the Liquidating Trust Assets by the Debtor to the Trust Beneficiaries in satisfaction of their Allowed Claims under the Plan, followed by a transfer of the Liquidating Trust Assets by the Trust Beneficiaries to the Liquidating Trust in exchange for their beneficial interests in the Liquidating Trust.  Thus, the Trust Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust.

D.    Securities Law.  Under Section 1145 of the Bankruptcy Code, the issuance of beneficial interests in the  Liquidating Trust to the Trust Beneficiaries under the Plan, to the extent such interests are deemed to be "securities," shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.  If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

## ARTICLE XVII
## LIQUIDATING TRUST BOARD

A.    Liquidating Trust Board. The initial members of the Liquidating Trust Board shall be _____, _____, and _____.  The Liquidating Trust Board shall make certain determinations, in accordance with this Agreement and the Plan.  Approval of a majority of the members of such Liquidating Trust Board shall be required for the Liquidating Trust Board to act, provided that the Liquidating Trust Board may delegate responsibility for discrete issues or decisions to one or more of its members.  The Liquidating Trust Board shall have the rights and powers set forth herein.  In the event that a Liquidating Trust Board shall not continue to exist under this Agreement, all references herein to required approval or other action of such Liquidating Trust Board shall be of no force or effect.

B.    Resignation/Replacement of Member of Liquidating Trust Board.  In the event that a member of the Liquidating Trust Board resigns, the remaining members of the Liquidating

4

Case: 16-30063    Doc# 753    Filed: 04/17/18    Entered: 04/17/18 13:29:48    Page 36 of 48

Trust Board, along with the Liquidating Trustee, shall by majority vote select a replacement to serve on the Liquidating Trust Board, if they deem it advisable and practicable.

**C.** <u>Reimbursement and Indemnification</u>.  Except for reimbursement of reasonable expenses, and indemnification as set forth in the Plan, the members of the Liquidating Trust Board shall receive no compensation or other payment for the performance of their duties hereunder.

**D.** <u>Confidentiality</u>.  Each member of the Liquidating Trust Board shall, while serving as a member of the Liquidating Trust Board under this Agreement and for a period of twelve (12) months following the termination of this Agreement or following his/her removal or resignation from the Liquidating Trust Board, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Liquidating Trust Assets relate or of which he or she has become aware in his/her capacity as a member of the Liquidating Trust Board.

**ARTICLE XVIII**
**ADMINISTRATION OF THE LIQUIDATING TRUST**

**A.** <u>Rights, Powers and Privileges</u>.  The Liquidating Trustee shall have only the rights, powers and privileges expressly provided in this Agreement and the Plan.  Subject to the Liquidating Trust Board's right of advice and comment discussed in Section 5.4 herein, the Liquidating Trustee shall have the power to take the actions granted in the subsections below and any powers reasonably incidental thereto, which the Liquidating Trustee, in his reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Liquidating Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

1. file, initiate, analyze, investigate, compromise and settle all causes of action that are Liquidating Trust Assets;

2. commence and/or pursue any and all actions involving Liquidating Trust Assets that could arise or be asserted at any time, unless otherwise waived or relinquished in the Plan;

3. hold legal title to any and all rights of the Debtor and the Trust Beneficiaries in or arising from the Liquidating Trust Assets;

4. protect and enforce the rights to the Liquidating Trust Assets (including, without limitation, any and all causes of action that are Liquidating Trust Assets) vested in the Liquidating Trustee by this Agreement and the Plan by any method deemed appropriate including, without limitation, by judicial proceedings or otherwise;

5. compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle, in accordance with the terms of this Agreement, claims in favor of or against the Liquidating Trust;

5

6. determine and satisfy any and all liabilities created or incurred by the Liquidating Trust;

7. file, if necessary, any and all tax and information returns with respect to the Liquidating Trust and pay taxes properly payable by the Liquidating Trust, if any;

8. request any appropriate tax determination with respect to the Liquidating Trust;

9. in reliance upon the official claims register maintained in the Debtors' chapter 11 cases, maintain on the Liquidating Trustee's books and records, a schedule evidencing the beneficial interest herein held by each Beneficiary;

10. administer, reconcile and resolve Claims asserted under the Plan (including the filing of any objections to such claims as appropriate) and make distributions to Holders of Allowed Claims under the Plan as provided for in, or contemplated by, this Agreement and the Plan;

11. open and maintain bank accounts on behalf of or in the name of the Liquidating Trust;

12. make all tax withholdings, file tax information returns, make tax elections by and on behalf of the Liquidating Trust and file returns for the Liquidating Trust;

13. establish such reserves for Disputed Claims, taxes, assessments, Liquidating Trustee's fees and professional fees and other expenses of administration of the Liquidating Trust as may be necessary and appropriate for the proper operation of matters incident to the Liquidating Trust;

14. pay all expenses and make all other payments relating to the Liquidating Trust Assets;

15. retain and pay third parties pursuant to Section 5.2 hereof;

16. obtain insurance coverage or a bond with respect to the liabilities and obligations of the Liquidating Trustee and the members of the Liquidating Trust Board under this Agreement (in the form of an errors and omissions policy or otherwise);

17. make distributions in accordance with the terms hereof;

18. all powers provided under the Plan to the Liquidating Trustee;

19. invest any moneys held as part of the Liquidating Trust Assets in accordance with the terms of Section 5.3 hereof; and

20. terminate the Liquidating Trust consistent with the terms of this Agreement and the Plan.

DOCS_SF:96441.3 96857/002

**B.**     Agents and Professionals. The Liquidating Trustee may, but shall not be required to, consult with and retain attorneys, accountants, appraisers, or other parties deemed by the Liquidating Trustee to have qualifications necessary to assist in the proper administration of the Liquidating Trust. The Liquidating Trustee may pay the reasonable salaries, fees and expenses of such persons (including himself), including contingency fees, out of the Liquidating Trust Assets in the ordinary course to the extent permitted by Section 6.7 below and the Plan.

**C.**     Investment and Safekeeping of Liquidating Trust Assets. All moneys and other Liquidating Trust Assets received by the Liquidating Trustee shall, until distributed or paid over as herein provided, be held in the Liquidating Trust for the benefit of the Trust Beneficiaries, but need not be segregated from other Liquidating Trust Assets, unless and to the extent required by law or the Plan. The Liquidating Trustee shall be under no liability for interest or producing income on any moneys received by the Liquidating Trust and held for distribution or payment to the Trust Beneficiaries, except as such interest shall actually be received by the Liquidating Trustee. Investments of any moneys held by the Liquidating Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs. For the removal of doubt, the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and the liquidating purpose of the Liquidating Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills.

**D.**     Limitations on Liquidating Trustee and Payment of Fees. The Liquidating Trustee shall not at any time, on behalf of the Liquidating Trust or Trust Beneficiaries: (i) enter into or engage in any trade or business, and no part of the Liquidating Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business, or (ii) except as provided below, reinvest any Liquidating Trust Assets.

1.     In the event of (a) compromises of pending litigation, (b) sales, transfers or abandonment of property with a value of more than $250,000, (c) claim settlements in which the claim amount conceded to be due and owing by the Liquidating Trustee exceeds $250,000, the Liquidating Trustee shall submit via email to the Liquidating Trust Board a notice describing the Liquidating Trustee's intended course of action and the justifications therefor. The majority of the Liquidating Trust Board shall have ten days from the receipt of the notice to object in writing to the intended action stating in writing the reason for the objection in detail. If there is no timely objection, the Liquidating Trustee can take the intended action. If there is an objection the Liquidating Trustee has five days to consult with the Liquidating Trust Board and if they cannot resolve the objection to the intended action the Liquidating Trustee can file a notice with the Bankruptcy Court setting a hearing to obtain approval of the intended action on not less than seven days' notice.

2.     Liquidating Trustee's and Professionals' Fees. The Liquidating Trustee and any of his professionals shall prepare invoices detailing hours, rate, employee and tasks performed and submit a copy of the invoice via email to the Liquidating Trust Board in order to consult with them and obtain their comments, if any. The majority of the Liquidating Trust Board shall have ten days from the receipt of the invoice to object in writing to the payment of

DOCS_SF:96441.3 96857/002

Case: 16-30063     Doc# 753     Filed: 04/17/18     Entered: 04/17/18 13:29:48     Page 39 of 48

the fees stating in writing the reason for the objection in detail. If there is no timely objection, the Liquidating Trustee can pay the invoice immediately. If there is an objection the Liquidating Trustee has five days to consult with the Liquidating Trust Board and if they cannot resolve the objection to the fees the Liquidating Trustee can file a notice with the Bankruptcy Court setting a hearing to obtain approval or modification of the Liquidating Trustee's fees on not less than seven days' notice.

        3.     The Liquidating Trustee may only invest funds held in the Liquidating Trust consistent with the requirements of this Agreement, and, provided that the Liquidating Trustee does so, he or she shall have no liability in the event of insolvency of any institution in which he or she has invested any funds of the Liquidating Trust Estate.

        4.     The Liquidating Trustee shall hold, collect, conserve, protect and administer the Liquidating Trust in accordance with the provisions of this Agreement and the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in this Agreement. Any determination by the Liquidating Trustee as to what actions are in the best interests of the Liquidating Trust shall be determinative.

      **E.**     <u>Bankruptcy Court Approval of Liquidating Trustee Actions</u>. Except as provided in the Plan or otherwise specified in this Agreement, the Liquidating Trustee need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court. The Liquidating Trustee shall exercise his/her business judgment for the benefit of the Trust Beneficiaries in order to maximize the value of the Liquidating Trust Assets and distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, the Liquidating Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Liquidating Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidating Trustee with respect to the Liquidating Trust Assets, this Liquidating Trust, the Agreement, the Plan, or the Debtor, including the administration and distribution of the Liquidating Trust Assets. The Bankruptcy Court shall retain jurisdiction for such purposes and shall approve or disapprove any such proposed action upon motion by the Liquidating Trustee. In addition, the Liquidating Trustee shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Liquidating Trust Asset free and clear of any and all liens, claims and encumbrances.

      **F.**     <u>Valuation of Liquidating Trust Assets</u>. Pursuant to the Plan, the Liquidating Trustee shall make best efforts to apprise the Trust Beneficiaries of the value of the Liquidating Trust Assets. The valuation shall be used consistently by all parties (including the Liquidating Trustee and Trust Beneficiaries) for all federal income tax purposes. Any dispute regarding the valuation of Liquidating Trust Assets shall be resolved by the Bankruptcy Court.

**ARTICLE XIX**
**DISTRIBUTIONS FROM THE LIQUIDATING TRUST**

      **A.**     <u>Distributions</u>. The Liquidating Trustee shall be responsible for making all distributions to be made under the Plan, or as provided in this Agreement or the Confirmation Order. Additionally, the Liquidating Trustee must retain and reserve such amounts as are

8

reasonably necessary to satisfy amounts that would be distributable in respect of Disputed Claims if the Disputed Claims were allowed in the face amount of such Disputed Claims (the "Disputed Claim Reserve"), and any such other amounts (such as other claims or other contingent liabilities) as reasonably necessary in his business judgment to fulfill her duties under the Plan or this Agreement.

      **B.**    <u>Pro Rata Share of Distributions</u>. Each Trust Beneficiary shall receive its share or pro rata share (as applicable) of any and all distributions in accordance with the Plan, except that the Liquidating Trustee may withhold from amounts distributable to any Trust Beneficiary, any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

      **C.**    <u>Delivery of Distributions</u>. All Distributions to be made under this Agreement and the Plan shall be made to Holders of Allowed Claims in accordance with the Plan.

      **D.**    <u>Timing of Distributions</u>. Any payment or other Distribution required to be made under this Agreement on a day other than a Business Day shall be due on the next succeeding Business Day. All payments or Distributions due on the Effective Date shall be made thereon or as soon as practicable thereafter but in no event later than ten business days after the Effective Date. Any payment of Cash made pursuant to this Agreement shall be deemed made when such payment by check or wire transfer is transmitted.

      **E.**    <u>Distributions After Allowance or Disallowance of a Disputed Claim</u>. Once a Disputed Claim becomes an Allowed Claim, the Liquidating Trustee shall, as soon as practicable, distribute to the Holder thereof, from the Disputed Claim Reserve, such amount of Liquidating Trust Assets as would have been distributed to such holder if its Claim had been an Allowed Claim on the Effective Date. The Liquidating Trustee shall no longer reserve for and shall distribute to such Trust Beneficiary, pursuant to Section 5.1 of this Agreement, the amount of any Disputed Claim that becomes disallowed.

      **F.**    <u>Payments Limited to Liquidating Trust Assets</u>. All payments to be made by the Liquidating Trustee to or for the benefit of any Trust Beneficiary shall be made only to the extent that the Liquidating Trustee has sufficient reserves to make such payments in accordance with this Agreement and the Plan. Each Trust Beneficiary shall have recourse only to the Liquidating Trust Assets for distribution under this Agreement and the Plan.

      **G.**    <u>Fees and Expenses</u>.

        1.    Subject to the limitations set forth herein and in the Plan, the Liquidating Trustee must pay and/or reserve the operating and administrative expenses of the Liquidating Trust before approving distributions to or for the benefit of Trust Beneficiaries.

        2.    The Liquidating Trustee shall satisfy any fees and expenses of the Liquidating Trust with Estate assets, including but not limited to the proceeds of Estate assets.

      **H.**    <u>Priority of Distributions</u>. Any recovery by the Liquidating Trust on account of the Liquidating Trust Assets shall be applied in the following order:

9

Case: 16-30063   Doc# 753   Filed: 04/17/18   Entered: 04/17/18 13:29:48   Page 41 of 48

(a)     first, to pay and/or reserve any unpaid or reasonably anticipated costs and expenses of the Liquidating Trust, including without limitation reasonable professional fees and expenses and court costs;

(b)     second, distributed to Holders of Allowed Claims in accordance with this Agreement and the Plan.

**I.**     <u>Compliance with Laws</u>.  Any and all distributions of Liquidating Trust Assets shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

**J.**     <u>Setoff Rights</u>.  The  Liquidating Trustee may, but shall not be required to, setoff against or recoup from the Holder of any Allowed Claim on which payments or other Distributions are to be made hereunder, claims of any nature that the Liquidating Trust may have against the Holder of such Allowed Claim.  However, neither the failure to do so, nor the allowance of any Claim under the Plan, shall constitute a waiver or release of any such claim, right of setoff or right of recoupment against the Holder of such Allowed Claim.

**K.**     <u>No Distributions Pending Allowance</u>.  If a Claim or any portion of a Claim is disputed, no payment or Distribution shall be made on account of the disputed portion of such Claim (or the entire Claim, if the entire Claim is disputed), unless such Disputed Claim or portion thereof becomes an Allowed Claim.

# **ARTICLE XX**
# **TRUST BENEFICIARIES**

**A.**     <u>Identification of Trust Beneficiaries</u>.  The Liquidating Trust participations of each Trust Beneficiary in the Liquidating Trust shall be recorded and set forth in a schedule (the "Schedule") maintained by the Liquidating Trustee expressly for such purpose.  In order to determine the actual names and addresses of the Trust Beneficiaries, the Liquidating Trustee may either (i) rely upon the Schedules and/or official claims register maintained in the Debtor's chapter 11 case, or (ii) deliver a notice to the Trust Beneficiaries.  Such notice will include a form for each Trust Beneficiary to complete in order to be properly registered as a Trust Beneficiary and be eligible for distributions under the Liquidating Trust.

**B.**     <u>Beneficial Interest Only</u>.  The ownership of a beneficial interest in the Liquidating Trust shall not entitle any Trust Beneficiary or the Debtor to any title in or to the Liquidating Trust Assets or to any right to call for a partition or division of such Liquidating Trust Assets or to require an accounting, except as specifically provided herein.

**C.**     <u>Ownership of Beneficial Interests Hereunder</u>.  Each Trust Beneficiary shall own a beneficial interest in the Liquidating Trust equal in proportion to the Pro Rata share of such Trust Beneficiary's Allowed Claim in accordance with the Plan.

**D.**     <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Liquidating Trust Assets shall not be evidenced by any certificate, security, or receipt or in any

DOCS_SF:96441.3 96857/002

Case: 16-30063    Doc# 753    Filed: 04/17/18    Entered: 04/17/18 13:29:48    Page 42 of
48

other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.

**E.**     Limitation on Transferability.  It is understood and agreed that the beneficial interests in the Liquidating Trust shall be assignable during the term of this Agreement only upon compliance with the notice provisions included herein, or by operation of law.  A voluntary assignment shall not be effective until appropriate notification and proof thereof is submitted to the Liquidating Trustee and a fee of $250 is paid to the Liquidating Trust.  Until then, the Liquidating Trustee may continue to pay all amounts to or for the benefit of the assigning Trust Beneficiaries to such Trust Beneficiaries.  An assignment (whether voluntary or by operation of law) shall not be effective until appropriate notification and proof thereof is submitted to the Liquidating Trustee, and the Liquidating Trustee may continue to pay all amounts to or for the benefit of the assigning Trust Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Liquidating Trustee may rely upon such proof without the requirement of any further investigation.

## ARTICLE XXI
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

**A.**     Parties Dealing With the Liquidating Trustee.  In the absence of actual knowledge to the contrary, any person dealing with the Liquidating Trust or the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee or any of the Liquidating Trustee's agents to act in connection with the Liquidating Trust Assets.  No person or entity which may deal with the Liquidating Trustee shall have any obligation to inquire into the validity or expediency or propriety of any transaction by the Liquidating Trustee or any agent of the Liquidating Trustee.

**B.**     Liquidating Trustee's Liability.  In exercising the rights granted herein, the Liquidating Trustee shall exercise his/her best judgment, to the end that the affairs of the Liquidating Trust shall be properly managed and the interests of all the Trust Beneficiaries and the Debtor are safeguarded.

## ARTICLE XXII
## SELECTION, REMOVAL AND COMPENSATION OF LIQUIDATING TRUSTEE

**A.**     Initial Liquidating Trustee.    The initial Liquidating Trustee shall be Randy Sugarman.

**B.**     Term of Service.  The Liquidating Trustee shall serve until (a) the completion of all the Liquidating Trustee's duties, responsibilities and obligations under this Agreement and the Plan; (b) termination of the  Liquidating Trustee in accordance with this Agreement; or (c) the Liquidating Trustee's death, resignation or removal.

**C.**     Removal of a Liquidating Trustee.  Any person serving as Liquidating Trustee may be removed at any time by an order of the Bankruptcy Court on notice to the Liquidating Trustee and the Liquidating Trust Board, and a determination by the Bankruptcy Court that such

DOCS_SF:96441.3 96857/002

Case: 16-30063    Doc# 753    Filed: 04/17/18    Entered: 04/17/18 13:29:48    Page 43 of 48

removal is appropriate upon a showing of good cause. The removal shall be effective on the date specified in the order.

**D.**     Resignation of Liquidating Trustee. The Liquidating Trustee may resign at any time by giving the Liquidating Trust Board at least thirty (30) days written notice of his or her intention to do so. In the event of a resignation, the resigning Liquidating Trustee shall render to the Trust Beneficiaries a full and complete accounting of monies and Liquidating Trust Assets received, disbursed, and held during the term of office of that Liquidating Trustee. The resignation shall be effective on the later to occur of: (i) the date specified in the notice; or (ii) the appointment of a successor by the Liquidating Trust Board and the acceptance by such successor of such appointment; *provided*, that if a successor Liquidating Trustee is not appointed or does not accept his or her appointment within thirty (30) days following delivery of notice of resignation, the resigning Liquidating Trustee may petition the Bankruptcy Court for the appointment of a successor Liquidating Trustee.

**E.**     Appointment of Successor Liquidating Trustee. Upon the resignation, death, incapacity, or removal of a Liquidating Trustee, the Liquidating Trust Board shall nominate a successor Liquidating Trustee to fill the vacancy so created, who shall be appointed by the Bankruptcy Court as provided in the Plan. Any successor Liquidating Trustee so appointed shall consent to and accept in writing the terms of this Agreement and agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Liquidating Trustee.

**F.**     Powers and Duties of Successor Liquidating Trustee. A successor Liquidating Trustee shall have all the rights, privileges, powers, and duties of his or her predecessor under this Agreement and the Plan. Notwithstanding anything to the contrary herein, a removed or resigning Liquidating Trustee shall, when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or, instruments conveying and transferring to such successor Liquidating Trustee under the Liquidating Trust Agreement all the estates, properties, rights, powers, and trusts of such predecessor Liquidating Trustee.

**G.**     Liquidating Trust Continuance. The death, resignation or removal of the Liquidating Trustee shall not terminate the Liquidating Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Liquidating Trustee. In the event that a successor Liquidating Trustee is not appointed within thirty (30) days of when required under this Agreement, any Beneficiary may apply to the Bankruptcy Court for appointment of a successor Liquidating Trustee upon notice to the Liquidating Trust Board.

**H.**     Compensation and Costs of Administration. The Liquidating Trustee shall receive fair and reasonable compensation for his/her services in accordance with his or her customary rates, subject to Section 5.4 of this Agreement and the terms of the Plan.

**I.**     Annual Reporting and Filing Requirements.

1.     Within 60 days after the end of each calendar year, the Liquidating Trustee shall furnish a report to the Liquidating Trust Board of all Liquidating Trust Assets

DOCS_SF:96441.3 96857/002

received by the Liquidating Trust, all Liquidating Trust Assets disbursed to Trust Beneficiaries, all Liquidating Trust Assets disbursed for professional fees and costs of administering the Liquidating Trust (including compensation paid to the Liquidating Trustee), and all Liquidating Trust Assets held by the Liquidating Trust during the preceding calendar year. The Liquidating Trustee's report will be available and provided to any Trust Beneficiary upon written request.

        2.    The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations. The Liquidating Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

        3.    The tax returns filed by the Liquidating Trustee shall report all Liquidating Trust earnings (including Liquidating Trust earnings retained as a Disputed Claim Reserve) for the taxable year being reported.

    **J.**    <u>Confidentiality</u>.  The Liquidating Trustee shall, while serving as Liquidating Trustee under this Agreement and for a period of twelve (12) months following the termination of this Agreement or following his/her removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Liquidating Trust Assets relate or of which he has become aware in his/her capacity as Liquidating Trustee.

**ARTICLE XXIII**
**MAINTENANCE OF RECORDS**

    **A.**    The Liquidating Trustee shall maintain books and records containing a description of all property from time to time constituting the Liquidating Trust Assets and an accounting of all receipts and disbursements.  Upon thirty (30) days' prior written notice delivered to the Liquidating Trustee, said books and records shall be open to inspection by any Trust Beneficiary at any reasonable time during normal business hours; *provided* that, if so requested, such Trust Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Liquidating Trustee.  The Liquidating Trustee shall furnish to any Trust Beneficiary upon written request an annual statement of receipts and disbursements of the Liquidating Trust. Such books and records may be destroyed without further notice to parties or approval of the Bankruptcy Court five (5) years after the final report to the Bankruptcy Court has been rendered by the Liquidating Trustee (unless such records and documents are necessary to fulfill the  Liquidating Trustee's obligations pursuant to this Agreement).

**ARTICLE XXIV**
**DURATION OF LIQUIDATING TRUST**

    **A.**    <u>Duration</u>.  The Liquidating Trust shall become effective upon the Effective Date of the Plan.  Thereupon, this Agreement shall remain and continue in full force and effect until the Liquidating Trust is terminated in accordance with the provisions of this Agreement and the Plan.

13

**B.** <u>Termination of the Liquidating Trust.</u>  The duties, responsibilities and powers of the Liquidating Trustee (and the Liquidating Trust) shall terminate on the earlier of (i) full resolution of all Liquidating Trust Assets transferred to the Liquidating Trust, distribution of the Liquidating Trust Assets and the net proceeds thereof in accordance with the Plan and the Liquidating Trust Agreement, or (ii) upon the satisfaction of or reservation for of all Allowed Administrative Claims, Priority Tax Claims, and Class 1 through 4 Claims in accordance with the Plan.  At such time, the Liquidating Trustee shall promptly file a Motion for Final Decree with the Bankruptcy Court.  Upon entry of the Final Decree, the Liquidating Trustee shall be discharged from his position as Liquidating Trustee and from all further duties, obligations and responsibilities under the Plan.

**C.** <u>Continuance of Liquidating Trust for Winding Up</u>.  After the termination of the Liquidating Trust and for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until his duties have been fully performed, including, without limitation, such post-distribution tasks as necessary to windup the affairs of the Liquidating Trust.  After the termination of the Liquidating Trust, the Liquidating Trustee shall retain for a period of two (2) years the books, records, Beneficiary lists, and certificates and other documents and files which shall have been delivered to or created by the Liquidating Trustee.  At the Liquidating Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the Liquidating Trust.  Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Liquidating Trust and final distribution of the Liquidating Trust, the Liquidating Trustee shall have no further duties or obligations hereunder.  The Liquidating Trustee may pay in advance from the assets of the Liquidating Trust all costs of document management.

## <u>ARTICLE XXV</u>
## MISCELLANEOUS

**A.** <u>Preservation of Privilege</u>.  In connection with the rights, claims, and causes of action and Estate Reserved Litigation that constitute the Liquidating Trust Assets, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust pursuant to the terms of the Plan or otherwise shall vest in the Liquidating Trustee and his representatives, the Debtor, the Plan Proponents and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, as necessary.

**B.** <u>Notices</u>.  Any notice or other communication which may be or is required to be given, served, or sent to the Liquidating Trust or the Liquidating Trust Board, as applicable, shall be in writing and shall be sent by Federal Express and email, or transmitted by hand delivery, addressed as follows:

If to the Liquidating Trust:

Randy Sugarman, Liquidating Trustee
505 Montgomery Street, Suite 1063
San Francisco, CA 94111

DOCS_SF:96441.3 96857/002

Email: sugarmanco@gmail.com


With a copy to:

Randy Michelson
Michelson Law Group
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Email: randy.michelson@michelsonlawgroup.com


If to the Liquidating Trust Board:


With copy to:

Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, California 94111
Email: jfiero@pszjlaw.com
Attn: John D. Fiero, Esq.


     **C.**    <u>No Bond</u>.  Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction.

     **D.**    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to principles of conflicts of law.

     **E.**    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

     **F.**    <u>Headings</u>.  The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or understanding of this Agreement or any provision hereof.

     **G.**    <u>No Execution</u>.  All funds in the Liquidating Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Liquidating Trust Assets or the Liquidating Trust in any manner or compel payment from the Liquidating Trust except by Final Order of the Bankruptcy Court.  Payment will be solely governed by this Agreement and the Plan.

DOCS_SF:96441.3 96857/002

**H.** <u>Intention of Parties to Establish Grantor Liquidating Trust</u>. This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

**I.** <u>Amendment</u>. This Agreement may be amended at any time by written agreement of the majority of the members of the Liquidating Trust Board, or by order of the Bankruptcy Court after motion by the Liquidating Trustee.

**J.** <u>Severability</u>. If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

**K.** <u>Counterparts and Facsimile Signatures</u>. This Agreement (or any amendment thereto) may be executed in counterparts and a facsimile or other electronic form of signature shall be of the same force and effect as an original.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year written above.

YELLOW CAB COOPERATIVE, INC.


By:_____
Name: Randy Sugarman
Title: Chapter 11 Trustee


LIQUIDATING TRUSTEE


_____
Randy Sugarman

16

Case: 16-30063    Doc# 753    Filed: 04/17/18    Entered: 04/17/18 13:29:48    Page 48 of 48